IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANGEL ENRIQUE NUNEZ ESCOBAR, *et al.,* ) | |
| ) | |
| *Plaintiffs.* ) | Civil Action No. 3:11-cv-994 |
| ) | |
| *v.* ) | Judges Campbell/Bryant |
| ) | |
| LEE GAINES, *et al.,* ) | |
| ) | |
| *Defendants.* ) | |
| ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING IMMIGRATON STATUS

Plaintiffs hereby submit this Memorandum in support of their Motion for a Protective Order Regarding Immigration Status, which seeks a protective order precluding Defendants from seeking documents or testimony from Plaintiffs or third-party witnesses related to immigration status or, in the alternative, for entry of a confidentiality order limiting the dissemination of immigration-related information if such discovery is permitted.[1]  In further support of the Motion, Plaintiffs state as follows:

### INTRODUCTION

This is a civil rights case in which Plaintiffs seek to vindicate their fundamental constitutional rights to be free from unlawful searches and seizures and discrimination. Defendants, however, seek discovery from Plaintiffs regarding their immigration status, even when such discovery is wholly immaterial to any of the claims or defenses at issue in this case, and serves only to harass and intimidate Plaintiffs.  Indeed, courts across the country have barred

---

[1] Plaintiffs attach hereto as Exhibit A, a Joint Discovery Dispute Statement, agreed to by Plaintiffs' counsel and counsel for MNPD and CSS Defendants.  Counsel for Greystar/ TriTex and counsel for ICE Defendants did not respond to Plaintiffs' counsel's request for their comments or agreement to the draft joint statement.

1

similar discovery in recognition of the irrelevance of immigration status to the adjudication of civil rights claims and the powerful *in terrorem* effect that would result from compelled disclosure of such information.

The *in terrorem* impact here is particularly acute, because compelling Plaintiffs or third-party witnesses to divulge information related to their immigration statuses could lead to their criminal and civil prosecution and deportation. The level of intimidation and potential risk in this case is further compounded by two distinct circumstances: (1) most Plaintiffs are the respondents in currently pending immigration removal proceedings seeking their deportation and (2) fourteen Defendants are ICE agents and law enforcement officers who have the ability to arrest and facilitate the prosecution of individuals without legal status in the United States.

Requiring discovery of information related to immigration status in this case would have the effect of conditioning Plaintiffs' access to the courts on the disclosure of immigration information that could be used to damning effect in ongoing removal proceedings and penalizing witnesses based on the mere happenstance that they may possess information relevant to a civil rights case. Compelling disclosure of such information would undoubtedly chill vindication of fundamental constitutional and civil rights in this and other cases. Plaintiffs therefore move for a protective order precluding Defendants from eliciting from Plaintiffs and third-party witnesses information related to their immigration statuses. In the alternative, if some limited discovery into these matters is allowed, such discovery should be subject to a strict confidentiality order.

## BACKGROUND

**A.     Facts**

Plaintiffs are fifteen victims of a large-scale, warrantless raid by Immigration and Customs Enforcement ("ICE"), the Metropolitan Nashville Police Department ("MNPD"), and private security guards of the Crime Suppression Services ("CSS") at the Clairmont Apartment complex in Nashville ("Clairmont") on October 20, 2010. Fourteen of the fifteen Plaintiffs are Latino. Plaintiffs allege violations of the Fourth Amendment's protection against unreasonable searches and seizures and the right to equal protection under the Fifth and Fourteenth Amendments, in addition to conspiracy claims, and Fair Housing Act claims against Defendants TriTex, Greystar, Tracy Hall, and CSS.

During the raid, law enforcement agents entered apartments occupied by Plaintiffs without search warrants or consent and without exigent circumstances that would justify a warrantless entry. Once inside the residences, law enforcement agents insulted and yelled profanities at Plaintiffs, such as "Mexican sons of bitches" and "fucking wetbacks," detained Plaintiffs without warrants or other legal justification, searched throughout the homes, and arrested several Plaintiffs without probable cause. Law enforcement agents also detained and interrogated, and in some cases arrested without any lawful justification, Plaintiffs as they sat in their lawfully parked cars or played outside. Defendant TriTex, the then-owner of Clairmont, Defendant Greystar, the then-manager of Clairmont, and Defendant Hall, the then-regional manager for Greystar with responsibility for Clairmont, along with Defendant CSS, conspired with the law enforcement Defendants and engaged in a campaign of harassment designed to force the Latino residents of Clairmont to move out, culminating in the raid at Clairmont on October 20, 2010.

3

Nothing illegal was found during the unlawful search of any of the Plaintiffs' residences and no criminal charges were ever filed against any of them. However, following the raid, thirteen Plaintiffs were transported to ICE facilities, charged with alleged administrative violations of civil immigration law, and detained in ICE custody for periods of time ranging from a few days to several months. Subsequent to the Clairmont raid, but prior to the filing of this suit, ICE instituted removal proceedings against the thirteen Plaintiffs charged with violations of immigration law, seeking to remove them from the United States.

Removal proceedings have, as of the date of this filing, already resulted in the removal of four Plaintiffs from the country, and removal proceedings actively remain ongoing as to eight additional Plaintiffs.[2] A contested and central issue in the removal proceedings is whether ICE has evidence that Plaintiffs are citizens or nationals of foreign countries. *See* 8 U.S.C. §1229a(c)(3)(A) (setting out burden on ICE to produce evidence of alienage of persons subject to removal proceedings). Furthermore, the Federal Rules of Evidence do not apply in immigration proceedings, *Dallo v. INS*, 765 F.2d 581, 586 (6th Cir. 1985), and therefore evidence that would typically be precluded in civil litigation, such as hearsay and even double or triple hearsay, may be admissible in the removal proceedings against Plaintiffs. Absent protections afforded by this Court, any evidence obtained in this suit relating to Plaintiffs' immigration statuses could be used against them in the ongoing removal proceedings, thereby facilitating their immediate removal from the country. Similarly, any evidence obtained related to the immigration statuses

_____

[2] Of the fifteen Plaintiffs, two are U.S. citizens and therefore cannot be subject to removal proceedings by ICE. All other Plaintiffs have been the subject of removal proceedings by ICE: removal proceedings have already resulted in the deportation of four of the Plaintiffs from the country; eight Plaintiffs are the subject of ongoing removal proceedings; and removal proceedings have been administratively closed as to one Plaintiff, but that closure was explicitly conditioned on ICE's ability to recalendar, i.e., reopen, the proceedings at any time.

of third-party witnesses could be used to initiate and prosecute removal proceedings against them.

### B. Discovery Regarding Immigration-Related Information

Defendants have asserted that they are entitled to discovery from Plaintiffs regarding their immigration statuses, and they have sought discovery to that effect. MNPD Defendants Hardin and Kemper and Defendants Paul West and CSS have served interrogatories and document requests concerning the immigration status of Plaintiffs. *See* Plaintiffs' Response to Defendant Hardin and Kemper's First Set of Document Requests; Plaintiff Angel Enrique Nuñez Escobar's Answers to Defendant Hardin and Kemper's Interrogatories; and Paul West d/b/a/ Crime Suppression Service's Interrogatories to Plaintiffs, attached collectively hereto as Ex. B.[3]

In addition to a General Objection regarding immigration status, Plaintiffs answered MNPD's discovery requests relevant to this Motion substantially as follows:

Interrogatory No. 1: Please state your full name, date of birth, social security number, current address and telephone number(s), and previous addresses for a period of five (5) years, indicating the dates of each address.

Answer: Plaintiff objects to this Interrogatory on the grounds that it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also objects to this Interrogatory as harassing, prejudicial, an undue violation of privacy, and potentially violative of his rights under the Fifth Amendment to the extent it seeks information related to his immigration status.

Subject to and notwithstanding these objections, Plaintiff states that his full name is Angel Enrique Nuñez Escobar. His date of birth is * * * * *, 19**. Plaintiff has lived at * * * * * *, Nashville, Tennessee, * * * * since approximately February 2012.[4]

* * * *

---

[3] Although the MNPD Defendants served a separate set of discovery requests on each Plaintiff, each Plaintiff's requests and responses that are relevant to this Motion are identical. Plaintiffs therefore refer here to the Interrogatory Answers of Plaintiff Angel Enrique Nuñez Escobar as a representative example of the interrogatories and answers at issue in this Motion.

[4] Because this Motion is publicly filed, Mr. Nuñez Escobar's date of birth and current address are not included here. His complete date of birth and current address are fully set out in the discovery responses served on Defendants.

5

> Request for Production No. 13: Copies of all W-2s and/or IRS 1099 forms reflecting Respondent's income from 2008 to the present.[5]
>
> Response: Plaintiffs object to this Request as neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiffs also object to the production of tax filings as an invasion of privacy. To the extent this Request seeks information regarding Plaintiffs' immigration status, Plaintiffs additionally object to the Request as harassing and prejudicial. Further, Plaintiffs object to this Request to the extent that requiring an answer may violate their rights including the Fifth Amendment.
>
>                                    \* \* \* \*
>
> Request for Production No. 14: A copy of each tax return (state and federal) that Respondent has filed from 2009 to the present.
>
> Response: Plaintiffs object to this Request as neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiffs also object to the production of tax filings as an invasion of privacy. To the extent this Request seeks information regarding Plaintiffs' immigration status, Plaintiffs additionally object to the Request as harassing and prejudicial. Further, Plaintiffs object to this Request to the extent that requiring an answer may violate their rights including the Fifth Amendment.

Similarly, one of Defendant Paul West's interrogatories calls for place of birth and information regarding Plaintiffs' social security numbers, and Plaintiffs intend to object at the time that their answer is due on September 24th:

> Interrogatory No. 1: State your full name, date and place of your birth, whether you have a Social Security number, your current address and occupation, and your address at the time of the incident which is the subject of this lawsuit.

---

[5] This is not an employment case and Plaintiffs do not seek lost wages. Defendants have no reason to seek Plaintiffs' tax returns and related financial information other than to be able to discern their immigration status. In addition to the irrelevance of tax returns to this case, Plaintiffs have independently objected to their production on privacy grounds. *See, e.g.*, *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 189 (D. Kan.1997) (noting public policy protecting against production of tax returns).

6

Additionally, each defense counsel has explicitly stated to Plaintiffs' counsel that he or she intends to inquire at depositions about immigration statuses and related topics.[6]

### C. Efforts at Resolving the Issue

In light of the importance of this issue, Plaintiffs' counsel initiated the discussion regarding discovery of Plaintiffs' immigration status at the time initial disclosures were served in April and have diligently engaged in continuing discussions with defense counsel since that time. Plaintiffs explained the reasons why immigration status is not relevant to any claim or defense at issue and, instead, is highly prejudicial to Plaintiffs. Defendants disagreed. Nevertheless, in an effort not to derail the discovery process, Plaintiffs offered to enter into certain stipulations regarding the existence of immigration removal proceedings against Plaintiffs, which would allow Defendants to explore any tangential impact of these facts. *See* Hendrickson's Letter to Counsel, dated June 22, 2012, attached hereto as Ex. C. Defendants were unwilling to agree that discovery of immigration status would be limited.

Finally, in a further effort to resolve this issue without intervention by the Court, Plaintiffs were willing to proceed with discovery related to Plaintiffs' immigration status, if such discovery were subject to a strict confidentiality order. To that end, Plaintiffs circulated to defense counsel a proposed confidentiality agreement on July 18, 2012. *See* Hendrickson's Letter to Counsel, dated July 18, 2012, attached hereto as Ex. D. Counsel for the Greystar and TriTex Defendants responded that they could not agree to the proposed confidentiality order. *See* Walthart's Letter to Hendrickson, dated July 24, 2012, attached hereto as Ex. E. Counsel for

---

[6] Once scheduled to begin on September 11th, depositions of Plaintiffs now have been postponed pending the outcome of this Motion. Out of an abundance of caution, Plaintiffs have provided discovery regarding potential third-party witnesses who were residents or occupants of Clairmont by the use of pseudonyms pending entry of a Protective Order by this Court. Defendants have not objected to this procedure.

CSS was agreeable generally to proceeding under the confidentiality order, but expressed various concerns about the terms of the proposed order. *See* McCaskill's Email to Hendrickson, dated July 26, 2012, attached hereto as Ex. F. Counsel for the MNPD Defendants also objected to Plaintiffs' proposed confidentiality order, but suggested an alternative order for consideration whose terms were also accepted by counsel for the ICE Defendants. *See* Bussell's Letter to Hendrickson, dated August 3, 2012, attached hereto as Ex. G.

Following a teleconference with counsel for MNPD Defendants to discuss the drafts, Plaintiffs' counsel subsequently circulated a revised version of the confidentiality order proposed by MNPD that was agreeable to Plaintiffs. *See* Hendrickson's Letter to Bussell, dated August 21, 2012, attached hereto as Ex. H. Counsel for MNPD Defendants, however, refused to agree to the revisions proposed by Plaintiffs, *see* Bussell's Letter to Hendrickson, dated August 24, 2012, attached hereto as Ex. I, and counsel for CSS further objected to the terms of the proposed order. *See* McCaskill's Email to Hendrickson, dated August 24, 2012, attached hereto as Ex. J. Neither counsel for ICE Defendants nor counsel for Greystar/ TriTex responded to Plaintiffs' proposed confidentiality order, and the parties reached an impasse.

## ARGUMENT

The Court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c). *See also Degen v. United States,* 517 U.S. 820, 826 (1996) (the court has the authority "to manage discovery in a civil suit, including the power to enter protective orders limiting discovery as the interests of justice require").

While Rule 26(c) "contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule."

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984). The Rule 26(c) standard is one of good cause. Courts often look to a number of factors in evaluating whether good cause exists to enter an order under Rule 26(c), including the injury that will result from the discovery sought, whether the information is relevant and necessary to the underlying action, and, if both inquiries are answered in the affirmative, whether the prejudicial effect outweighs that purpose. *See e.g. Universal Delaware, Inc. v. Comidata Network, Inc.*, No. 3:10-mc-00104, 2011 WL 1085180, at *2 (M.D. Tenn. Mar. 21, 2011).

In this case, the significant prejudicial effect of compelling production of discovery by Plaintiffs and third-party witnesses regarding their immigration status far outweighs any minimal purpose of such discovery, particularly where, as here, such discovery is irrelevant to the claims and defenses at issue.

I.      **Discovery Elicited from Plaintiffs and Witnesses Related to Immigration Statuses is Irrelevant, And Any Marginal Relevance Would Be Far Outweighed By the Harmful and *In Terrorem* Effect of the Production.**

Compelling Plaintiffs or third-party witnesses to provide sworn testimony, through interrogatories or depositions, related to their immigration status would not produce any relevant evidence and would cause extreme prejudice to Plaintiffs and witnesses. Such discovery serves no legitimate purpose and would result in precisely the harms that Rule 26(c) is designed to prevent: annoyance, embarrassment, and oppression. Fed. R. Civ. P. 26(c)(1).

**A. Discovery regarding immigration status is not relevant to any claims or defenses.**

In discussions with Plaintiffs' counsel, defense counsel have argued that Plaintiffs' immigration status is somehow relevant to the constitutionality of the entries, searches, and seizures at Clairmont.

9

This argument is wholly without merit. Whether the law enforcement defendants had a lawful basis for the warrantless entries and searches of Plaintiffs' homes or for the seizures and arrests of Plaintiffs depends *solely* on what the officers knew at the time of the entry, search, seizure, and/or arrest. Any information subsequently discovered by the Defendants in the course of this litigation about Plaintiffs' immigration statuses is immaterial and, in any event, inadmissible at trial, because it has nothing to do with what Defendants knew on October 20, 2010.

Law enforcement Defendants admit they had no search or arrest warrants when they entered and searched multiple Clairmont Apartments and detained Plaintiffs while they were relaxing after work and preparing dinner. *See* ICE Defendants and Hardin and Kemper Answers to Am. Compl., ECF Nos. 153, 144, 145 at ¶¶ 236, 242. To justify a warrantless entry, valid consent must be obtained or exigent circumstances must be known to the officers *at the time* of the warrantless entry. *See, e.g.*, *United States v. Morgan,* 743 F.2d 1158, 1162 (6th Cir. 1984) ("[T]he critical time for determining whether exigency exists 'is the moment of the warrantless entry by the officers'") (quoting *United States v. Killebrew,* 560 F.2d 729, 733 (6th Cir. 1977)). Similarly, any probable cause that would support a warrantless search, arrest or seizure of Plaintiffs "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer *at the time* of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (emphasis added); *see also Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998). Any testimony provided by Plaintiffs or third-party witnesses at the present time regarding the immigration statuses of those present at Clairmont on October 20, 2010 would have no bearing on these analyses under the Fourth Amendment.

Unsurprisingly, these bedrock principles of the Fourth Amendment have led other courts that have addressed this issue in similar cases to the straightforward conclusion that after-acquired evidence of immigration status clearly is not relevant. For instance, *Barrera v. Boughton* involved allegations that police officers and ICE agents improperly targeted plaintiffs and that officers arrested them without probable cause. No. 3:07cv1436, 2010 WL 1240904 (D. Conn. Mar. 19, 2010). The court precluded discovery of plaintiffs' immigration status and related information, holding that such information "is not probative of the facts the defendants knew at the time of detention or arrest and therefore, contrary to the defendants' argument, is not relevant to whether the defendants had reasonable suspicion or probable cause." *Id.* at *4. [7]

Similarly, the plaintiffs in *De La O v. Arnold-Williams* alleged that the police had detained and arrested them without reasonable suspicion or probable cause. No. CV-04-0192, 2006 WL 6494873, at *2 (E.D. Wash. Oct. 20, 2006). The defendants sought discovery of plaintiffs' immigration statuses and related information, arguing that it was relevant to justifying the police investigation of the plaintiffs. *Id.* The Court entered a protective order as to plaintiffs' immigration status, tax returns and social security numbers, noting that the defendants "will need to show that a legitimate police concern existed at the time of the investigation not by evidence obtained through later discovery." *Id.* at *2-3.

Importantly, Plaintiffs here do not seek to preclude discovery into information that ICE, MNPD, or other defendants had *at the time of the raid* regarding Plaintiffs' immigration status. But, Plaintiffs *do* seek the Court's protection from a subsequent fishing expedition by

---

[7] Specifically, the *Barrera* Court entered a protective order precluding defendants from inquiring into the plaintiffs' immigration statuses, social security numbers, birthplaces, information regarding the plaintiffs' entry in the United States, any arrests, warnings, and citations the plaintiffs might have received outside the United States, and the plaintiffs' passports, driver's licenses and/or social security cards. 2010 WL 1240904, at *6.

Defendants into immigration information, because any such information obtained from Plaintiffs or third-party witnesses in 2012 is not and cannot be relevant to what Defendants knew two years earlier in 2010.

Defense counsel have also articulated to Plaintiffs' counsel two other potential rationales for seeking immigration-related discovery, neither of which holds water. Counsel for the ICE Defendants has suggested that immigration status or information that implicates immigration status may be relevant to the credibility of Plaintiffs and third-party witness. That argument is quite a stretch, and it is difficult to imagine how an individual's immigration status bears on whether he or she is being truthful about the events of October 20, 2010. Fittingly, courts have regularly precluded discovery of such information as entirely irrelevant to credibility or because the marginal relevance to credibility is greatly outweighed by the potential harms caused by disclosure. *See e.g., Barrera*, 2010 WL 1240904, at *5 (ordering protective order and holding "whatever value the information [arguably relevant to credibility] might hold as to impeachment is outweighed by the chilling and prejudicial effect of disclosure"); *Rengifo v. Erevos Enterprises, Inc.*, 06 Civ. 4266, 2007 WL 894376, at *3 (S.D.N.Y. Mar. 20, 2007) (ordering protective order and explaining defendants' "opportunity to test the credibility" of [plaintiff] "does not outweigh the public interest in allowing employees to enforce their rights"); *De La O*, 2006 WL 6494873, at *2 ("[A]ny relevance the Plaintiffs' immigration status might have as to their credibility is outweighed by the damage and prejudice to Plaintiffs if disclosure was required."); *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 502-503 (W.D. Mich. 2005) (rejecting argument that immigration status is relevant to credibility and entering protective order prohibiting immigration-related discovery).

Likewise, counsel for MNPD Defendants has suggested that discovery from Plaintiffs regarding their immigration status may be relevant to Plaintiffs' damages claims. That argument too misses the mark. Plaintiffs seek compensatory damages, including out-of-pocket expenses, pain and suffering, and emotional distress, as well as punitive damages. Plaintiffs do not seek lost wages. Although Defendants have not defined the precise contours of their asserted relevance of immigration status to damages, as best as Plaintiffs can tell, Defendants seem to believe that being in removal proceedings may have an effect on the emotional distress damages that Plaintiffs seek in this case. Plaintiffs disagree with that rationale, but, in any event, to alleviate Defendants' concerns, Plaintiffs have offered to stipulate, where accurate, that Plaintiffs are or have been the subject of removal proceedings alleging that they are not lawfully in the United States and seeking their removal. The proposed stipulation would accommodate any legitimate concerns Defendants may have regarding their ability to defend against Plaintiffs' damages claims. Defendants, however, have declined Plaintiffs' invitation to enter into such a stipulation and insist on attempting elicit testimony from Plaintiffs concerning their specific immigration status.

**B. Even if immigration status were marginally relevant, the prejudicial effect of such information far outweighs any potential purpose.**

Even if testimony elicited from Plaintiffs and third-party witnesses were somehow tangentially relevant to any claim or defense in this case—and as outlined above, it is not—any marginal relevance is vastly outweighed by the extreme potential harm and prejudice to Plaintiffs and third-party witnesses of being compelled to provide testimony related to immigration status, which may be introduced in pending or future removal proceedings.

In this particular case, the risk of harm and the powerful *in terrorem* effects of production of immigration status are significantly amplified because eight Plaintiffs are the subject of

ongoing removal proceedings, and a ninth Plaintiff's removal case could be reopened at any time.  Furthering heightening these effects, twelve of the named Defendants are employees of the Department of Homeland Security, which has initiated and actively prosecuted the removal cases against Plaintiffs.  Absent a protective order, evidence that is not at all relevant to *this* case could be used to damning effect in Plaintiffs' removal proceedings.

What is more, the raid was witnessed by other residents of Clairmont, including friends and family of the Plaintiffs who just happened to be at home or visiting friends on the evening of October 20, 2010.  None of the third-party witness were arrested or charged with any crime on the day of the raid.  Although, to Plaintiffs' knowledge, none of those potential witnesses are in removal proceedings, the mere happenstance that they possess information potentially relevant to this case could make them vulnerable to extreme civil and criminal consequences if Defendants are allowed to explore and disseminate information related to immigration status in this litigation.

Accordingly, courts have repeatedly recognized the varied and significant harms that can result from disclosure of the immigration status of plaintiffs and third-party witnesses, including collateral consequences in immigration or criminal proceedings, embarrassment, harassment, intimidation, and the chilling effect on future litigation.  *See e.g.*, *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) (issuing writ of mandamus to overturn allowance of discovery regarding immigration status because it "could inhibit petitioners in pursuing their rights in the case because of possible collateral wholly unrelated consequences, because of embarrassment and inquiry into their private lives which was not justified, and also because it opened for litigation issues which were not present in the case."); *Sandoval v. Rizzuti Farms*, *Ltd.,* No. CV-07-3076, 2009 WL 959478, at *2 (E.D. Wash. Apr. 7, 2009) ("The harm in disclosing Plaintiffs'

immigration status is significant and real.  If disclosed … [plaintiffs] would fear criminal prosecution and deportation [and] would be reluctant to exercise their rights under existing statute and federal laws."); *Montoya v. S.C.C.P Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 749 (D. Md. 2008) ("[C]ourts are reluctant to order production of personal information disclosure of which might be seen as innocuous in an ordinary case, but threatening when immigration status is unclear."); *Topo v. Dhir*, 210 F.R.D. 76, 79 (S.D.N.Y. 2002) ("The potential danger of deterring plaintiff from having her day in court by inquiring into a non-relevant matter such as her immigration status is precisely the type of 'oppression' Rule 26(c) was designed to prevent.").

In this case, the risk faced by these Plaintiffs, most of whom are the subject of ongoing deportation proceedings, and third-party witnesses goes far beyond typical embarrassment and harassment.  Courts have long recognized that removal or deportation is a "severe" consequence. *Camaj v. Holder*, 625 F.3d 988, 993 (6th Cir. 2010).  S*ee also Padilla v. Kentucky*, --- U.S. ---, 130 S.Ct. 1473, 1486 n.11 (2010) (analogizing deportation to "'banishment or exile[.]'") (quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390-91 (1947)); *Galvan v. Press*, 347 U.S. 522, 531 (1954) (commenting that the "intrinsic consequences of deportation are so close to punishment for crime").  Even if discovery from Plaintiffs and third-party witnesses regarding their immigration statuses were somehow marginally relevant, the extreme potential harm present in this case presents more than good cause to preclude it.

Moreover, Plaintiffs should not be placed in the "Catch 22" that Defendants are insisting upon: they should be able to pursue their constitutional rights in this litigation without self-

incriminating themselves and risking their rights in another case. [8]  *See E.E.O.C. v. City of Joliet*, 239 F.R.D. 490, 493 (N.D. Ill. 2006) (noting that "[t]he intimidating effect" of permitting inquiry into immigration status "is hard to exaggerate,' and that "[t]his step alone may be sufficient to end the lawsuit regardless of the merits of the case"); *Flores v. Albertsons, Inc.*, No. CV 01-00515, 2002 WL 1163623, at *6 (C.D. Cal. Apr. 9, 2002 ("[T]here is an *in terrorem* effect to the production of [immigration] documents.  It is entirely likely that any undocumented class member forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face . . . potential deportation.").  Nor should third-party witnesses, who did not initiate this lawsuit and seek no relief, be subjected to the risk of prosecution and deportation merely based on the happenstance of their presence at Clairmont on October 20, 2010.

For all of these reasons, courts routinely prevent defendants from discovering plaintiffs' immigration-related information, even when it is arguably relevant to the merits of the case.  *See, e.g.*, *Barrera*, 2010 WL 1240904, at *5 ("[W]hatever value the information might hold . . . is outweighed by the chilling and prejudicial effect of disclosure."); *Pacheco v. Boar's Head Provisions Co., Inc.*, 2009 WL 2568324, at *1 (W.D. Mich. Aug. 3, 2009) ("[Q]uestions directly

---

[8] Requiring Plaintiffs to disclose information related to immigration status could implicate their Fifth Amendment rights.  The Supreme Court has long held that one cannot be compelled to choose between the Fifth Amendment privilege against self-incrimination and the vindication of his other rights.  *See, e.g., Simmons v. United States*, 390 U.S. 377, 394 (1968) (when petitioner was obliged to either give up Fourth Amendment claim or waive Fifth Amendment privilege, holding "it intolerable that one constitutional right should have to be surrendered in order to assert another.").  Courts cite this as another reason for refusing to permit inquiry into immigration status-related matters.  *See, e.g., Garcia-Andrade v. Madra's Café Corp.*, No. 04-71024, 2005 WL 2430195, at *2 (E.D. Mich. Aug. 3, 2005) ("[T]here is sufficient case law to support the assertion that immigration status is irrelevant in this matter and what little relevance the other information [related to immigration status] sought by the Defendants in this matter [has] is outweighed by the Fifth Amendment concerns expressed by the Plaintiffs.").  *See also* Fed. R. Civ. P. 26(b)(1) (discovery may only be had of "nonprivileged" matters).

involving a party's immigration status sought irrelevant or marginally relevant information and … their utility was outweighed by the probability of witness intimidation."); *Trejos v. Edita's Bar & Rest., Inc.*, No. CV-08-1477, 2009 WL 749891, at *2 (E.D.N.Y. Mar. 17, 2009) ("[E]ven if the information sought [about the plaintiffs' immigration status] were somehow relevant, the *in terrorem* effect of the questions defendants seek to press outweighs the need for disclosure."); *Topo,* 210 F.R.D. at 78 ("[W]hen the question of a party's immigration status only goes to a collateral issue, as in this case, the protective order becomes necessary").

Here, even beyond other cases in which discovery into immigration status is regularly excluded, where the risk of deportation is immediate and real, Plaintiffs and third-party witnesses should not be compelled to provide discovery relating to their immigration status.

### C. This Court should enter a protective order precluding discovery into immigration-related topics.

In view of the scant relevance and extreme prejudice, this Court should enter a protective order precluding Defendants from inquiring from Plaintiffs and third-party witnesses about their immigration statuses and other issues that implicate immigration status. As numerous courts have held, immigration status and issues touching upon immigration status are simply not discoverable in a case such as this. Specifically, courts have precluded discovery into issues including immigration status, *see, e.g., Barrera*, 2010 WL 1240904, at *6*; Rengifo*, 2007 WL 894376, at *3; *De La O*, 2006 WL 6494873, at *2; *Galaviz-Zamora*, 230 F.R.D. at 503*;Garcia-Andrade v. Madra's Café Corp.*, No. 04-71024, 2005 WL 2430195, at *2 (E.D. Mich. Aug. 3, 2005), national origin, *see, e.g., Galaviz-Zamora*, 230 F.R.D. at 503, place of birth, *see, e.g., Barrera;* 2010 WL 1240904, at *6, entry into the United States, *see, e.g., Barrera*, 2010 WL 1240904, at *6; *Galaviz-Zamora*, 230 F.R.D. at 503, ability to work in the United States, *see, e.g., Rengifo*, 2007 WL 894376, at *3; *Galaviz-Zamora*, 230 F.R.D. at 503; *Garcia-Andrade*,

2005 WL 2430195, at *2, crossing of the United States borders, *see, e.g., Galaviz-Zamora*, 230 F.R.D. at 503, tax returns, W-2 statements, and 1099 forms, *see, e.g., Galaviz-Zamora*, 230 F.R.D. at 503; *De La O*, 2006 WL 6494873, at *1, and social security numbers, social security cards, tax identification numbers, passports, visas, and driver's licenses, s*ee, e.g., Barrera,* 2010 WL 1240904, at *6; *Rengifo*, 2007 WL 894376, at *3; *De La O*, 2006 WL 6494873, at *3; *Galaviz-Zamora*, 230 F.R.D. at 503.

This Court should protect Plaintiffs and third-party witnesses from Defendants' invasive and unduly prejudicial attempts to discover their immigration status, an issue entirely irrelevant in this litigation. For the Court's consideration, Plaintiffs have attached a proposed protective order hereto as Exhibit K.

## II.     If the Court Permits Discovery into Immigration-Related Information, Such Information Should, At a Minimum, Be Shielded by a Strict Confidentiality Order.

Although Plaintiffs and third-party witnesses should not be subject to discovery regarding immigration-related information in this case, if such discovery were permitted, it should be conducted pursuant to a confidentiality order that strictly limits distribution of the information. Because Plaintiffs are the subject of ongoing removal proceedings, without a confidentiality order, Plaintiffs may have the choice of simply not participating in this lawsuit, on the one hand, and putting themselves, their families, and their cohabitants at risk for deportation, and separation from their loved ones, on the other. Third-party witnesses would be vulnerable to similar risks.

As set out above, in an effort to resolve this dispute without intervention by the Court, the parties have discussed potential terms of a confidentiality order. Plaintiffs have attached hereto as Exhibit L the confidentiality order agreeable to Plaintiffs, which incorporates several of the

changes and modifications requested by Defendants following their review of an earlier draft order circulated by Plaintiffs. The confidentiality order generally provides for discovery from Plaintiffs regarding immigration status, but it limits the distribution of immigration-related information to counsel to the parties, along with certain ICE attorneys, clerical staff, experts and consultants, court personnel, Plaintiffs, and other persons who are agreed to by all counsel.

The most significant sticking point between the parties regarding the terms of the proposed confidentiality order appears to be the assertion by some Defendants that disclosure of the immigration-related information should be permitted to unidentified third-party record keepers, including former and current employers as well as medical care providers, in order to enable Defendants to subpoena those record keepers for Plaintiffs' files. Plaintiffs object to sensitive and highly prejudicial information regarding Plaintiffs' immigration status being freely shared by Defendants with third parties.

Put simply, Defendants are not entitled to discovery from Plaintiffs' current or former employers or medical care providers. Most of Plaintiffs' work histories consist of seasonal or temporary work, and there is no aspect of their employment that is relevant to this case: there is no claim for lost wages, and there is no issue of mitigation of damages. Furthermore, nearly all Plaintiffs were detained immediately after the raid, making it unlikely that there are potential witnesses at any of Plaintiffs' workplaces. Similarly, Plaintiffs' medical records are not relevant, as they are not seeking any damages for medical expenses incurred because of Defendants' actions.

However, the issuance of subpoenas to these third parties would be a significant invasion of Plaintiffs' privacy and, in the instance of Plaintiffs' former and current employers, could jeopardize their employment. Any efforts to obtain this discovery would be nothing more than a

fishing expedition, and any confidentiality order should not permit Defendants to share sensitive immigration-related information with third parties. *See Woods v. Fresenius Med. Care Group of N. Am.,* No. 06-cv-1804, 2008 WL 151836, at *1 (S.D. Ind. Jan. 16, 2008) (quashing subpoena for the plaintiff's personnel records because of plaintiff's "legitimate interest" in "maintaining her relationship with her current employer"). Particularly when weighed against the significant harm to Plaintiffs described above, Defendants' interest in an ill-defined fishing expedition does not justify discovery into records kept by third parties that have no relevance to the claims at issue in this case.

Dated: September 12, 2012                          Respectfully submitted,

                                                  /s/ Cara A. Hendrickson
                                                   One of Plaintiffs' Attorneys

Andre Segura                          Elliott Ozment
Justin Cox                            Tricia Herzfeld
Lee Gelernt                           R. Andrew Free
ACLU FOUNDATION IMMIGRANTS'           Law Offices of Elliott Ozment
RIGHTS PROJECT                        1214 Murfreesboro Pike
125 Broad Street, 18th Floor          Nashville, TN 37217
New York, New York 10004              T: (615) 321-8888
T: (212) 549-2660                     elliott@ozmentlaw.com
asegura@aclu.org                      afree@ozmentlaw.com
jcox@aclu.org                         tricia@ozmentlaw.com
lgelernt@aclu.org

Cecillia D. Wang
ACLU FOUNDATION IMMIGRANTS'
RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
T: (415) 343-0775
cwang@aclu.org

ATTORNEYS FOR JOSE ARSENIO QUINTANILLA GOMEZ, JAVIER  ORLANDO DERAS, JUAN BAUTISTA MENDEZ MARTINEZ, ISIAS RAXCACO CAJBON, EDUARDO CAHUEC GARCIA, MARVIN BENJAMIN LOPEZ RAXICO, COSMER JUAREZ CAJBON, CARLOS ROBERTO MENDEZ MARTINEZ, KIMBERLY CUSTIS, AND SHANNON NORIEGA LUCAS, as parent and next friend of her child, B.B.

Matthew J. Piers
José J. Behar
Cara A. Hendrickson
Jenna L. Miara
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W. Madison St., Suite 4000
Chicago, IL 60602
T: (312) 580-0100
*mpiers@hsplegal.com*
*jbehar@hsplegal.com*
*chendrickson@hsplegal.com*
*jmiara@hsplegal.com*

Elliott Ozment
R. Andrew Free
Tricia Herzfeld
Law Offices of Elliott Ozment
1214 Murfreesboro Pike
Nashville, TN 37217
T: (615) 321-8888
*elliott@ozmentlaw.com*
*afree@ozmentlaw.com*
*tricia@ozmentlaw.com*

ATTORNEYS FOR ANGEL ENRIQUE NUNEZ ESCOBAR, DAVID SALGADO FIGUEROA, GERARDO MORTEO MENDEZ, JESUS ANTONIO SANCHEZ VILLABOS, AND JORGE PALENCIA SARMIENTO

21

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING IMMIGRATION STATUS** will be served to counsel listed below by CM/ECF on September 12, 2012.

Sam Delk Kennedy, Jr.
Office of the United States Attorney (MDTN)
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203-3870
Delk.kennedy@usdoj.gov

Allison L. Bussell
Christopher M. Lackey
Metropolitan Legal Department
P.O. Box 196300
Nashville, TN 37219
Allison.bussell@nashville.gov
Chris.lackey@nashville.gov

Richard C. Mangelsdorf, Jr.
Brian F. Walthart
Leitner, Williams, Dooley, and Napolitan
414 Union Street, Suite 1900
Nashville, TN 37219
Chuck.mangelsdorf@leitnerfirm.com
Brian.walthart@leitnerfirm.com

William Gerald McCaskill, Jr.
LeVan, Sprader, Patton & McCaskill PLLC
150 Fourth Avenue, N
Suite 1020
Nashville, TN 37219
jmccaskill@lsplaw.net

/s. Cara A. Hendrickson
One of Plaintiffs' Attorneys

22