IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANGEL ENRIQUE NUNEZ ESCOBAR, *et al.,* ) | |
| ) | |
| *Plaintiffs.* ) | Civil Action No. 3:11-cv-994 |
| ) | |
| *v.* ) | |
| ) | Judge Campbell/ Bryant |
| LEE GAINES, *et al.,* ) | JURY DEMAND |
| ) | |
| *Defendants.* ) | |
| ) | |
| ) | |

## PLAINTIFFS' APPLICATION FOR FEES AND EXPENSES
## UNDER FED. R. CIV. P. 37(b)(2)(c)

Plaintiffs, by and through the undersigned counsel, hereby submit this Application for
Fees and Expenses under Fed. R. Civ. P. 37(b)(2)(c) ("Application") and pursuant to this Court's
Order of June 17, 2013. (Dckt. 266.) In support of their Application, Plaintiffs state the
following:

### INTRODUCTION

As the Court is well aware, Plaintiffs' Application relates to ongoing discovery
noncompliance by ICE Defendants and nonparty ICE that has, thus far, spanned over twelve
months. ICE Defendants, ignoring well-established Sixth Circuit precedent, have refused to
provide any documents. ICE has thrown up repeated roadblocks, ignored Plaintiffs' efforts to
seek compliance with the subpoena, and has forced constant "policing" by the Court and
Plaintiffs' counsel. As a result, Plaintiffs' counsel has been required to spend considerable effort
and time conferencing with ICE counsel, drafting correspondence, preparing court pleadings, and
preparing for and attending court conferences and hearings – none of which would have been
necessary but for the ICE Defendants' and ICE's disregard for their discovery obligations.

After applying billing judgment, Plaintiffs hereby submit this Application, pursuant to this Court's June 17, 2013 Order, related to Plaintiffs' Motion to Compel Production of Documents and Motion for an Order to Show Cause and for Sanctions and seek a total of $85,404 in fees and expenses.

## ARGUMENT

### I.     Background of Discovery Dispute

Although Plaintiffs do not wish to belabor the facts, some background information is necessary to provide context for this Application. On April 27, 2012, Plaintiffs[1] served their first set of requests for production on the ICE Defendants. (Dckt. 159-1.) Shortly thereafter, on May 17, 2012, Plaintiffs served a Rule 45 subpoena on nonparty ICE seeking production of similar documents. (Dckt. 159-2.) On June 21, 2012, ICE Defendants responded to Plaintiffs' document requests without producing any documents.  Besides boilerplate objections to every single document request as overbroad and unduly burdensome, ICE Defendants objected to each request on the grounds that any such "documents requested are in the possession and control of Immigration and Customs Enforcement."  (Dckt. 159-3.)

Plaintiffs' counsel first raised ICE's failure to produce documents to the Court nearly a year ago, during a telephonic status conference held on July 10.  During that call, agency counsel for ICE, Steve Ohrvall, reported that he had a "box" of documents that were being transmitted to Mr. Kennedy, counsel for ICE Defendants and ICE, that day and that the shipment would be the

---

[1] Hughes Socol Piers Resnick & Dym, Ltd. ("HSPRD") and Ozment Law represent David Salgado Figueroa, Gerardo Morteo Mendez, Angel Enrique Nuñez Escobar, Jesus Antonio Sanchez Villalobos, and Jorge Manuel Palencia Sarmiento.  Ozment Law, the ACLU of Tennessee, and the ACLU Immigrants' Rights Project represent Javier Orlando Deras, Juan Bautista Mendez Martinez, Carlos Roberto Mendez Martinez, Eduardo Cahuec Garcia, Cosmer Juarez Cajbon, Marvin Benjamin Lopez Raxcaco, Isaias Raxcaco Cajbon, B.B., and Kimberly Custis.  ACLU of Tennessee does not seek fees in connection with the instant Application. Although Plaintiffs are represented by different counsel, for efficiency, counsel have coordinated discovery efforts and served a single set of discovery on ICE Defendants and ICE to reduce duplication of efforts.

2

"lion's share" of ICE's production, although he did not know how many additional documents were outstanding. During that call, the Court expressed a desire to get the case moving, asked ICE, to the extent possible, to expedite the production of documents, and requested that Plaintiffs' counsel wait for ICE's upcoming production before taking further action. Plaintiffs' counsel followed up with Mr. Kennedy the next day, asking that documents be produced as soon as possible.

ICE subsequently produced documents, received by Plaintiffs' counsel on July 20, 2012, but it was hardly the "lion's share" of the documents requested by the subpoena; indeed, the documents produced were only a small portion of the documents requested by Plaintiffs. Although Plaintiffs' counsel again followed up by email and teleconferences regarding the production of the remainder of the documents requested by Plaintiffs, ICE counsel was not able to provide any update about when any more documents might be produced.

Left with no choice, Plaintiffs filed a Motion for an Order to Show Cause and to Compel Production of Documents by Immigration and Customs Enforcement and ICE Defendants on August 3, 2012, seeking production of documents requested by way of document requests served on ICE Defendants on April 27, 2012, and by way of a subpoena served on ICE on May 17, 2012. (Dckt. 158.) Neither ICE nor the ICE Defendants responded to Plaintiffs' August 3 motion.

On September 24, 2012, this Court granted Plaintiffs' Motion to Compel and ordered ICE and the ICE Defendants to produce all responsive information no later than October 15, 2012. (Dckt. 172.)

October 15 came and went, and neither the ICE Defendants nor ICE complied with the Court's order by producing all documents responsive to Plaintiffs' document requests and

3

subpoena.  Following ICE and ICE Defendants' failure to comply with the Court's Order, on October 29, 2012, Plaintiffs filed a Motion for an Order to Show Cause and For Sanctions Against Immigration and Customs Enforcement and the ICE Defendants for Disobeying This Court's September 24 Order.  That Motion detailed fourteen categories of documents, along with email and documents from the ICE Defendants, that remained outstanding. (Dckt. 201.)  The ICE Defendants responded on November 30, 2012 (Dckt. 216), and Plaintiffs filed their reply on December 11, 2012. (Dckt. 221.)

For more than five months following the filing of Plaintiffs' Motion for an Order to Show Cause, neither ICE nor the ICE Defendants produced the remaining documents called for by the document requests and subpoena.   Plaintiffs' counsel had repeated teleconferences with ICE counsel during these five months, and drafted correspondence detailing deficiencies in the production and materials that remained outstanding.

Despite continued efforts to obtain ICE's compliance with Plaintiffs' subpoena, after several months of noncompliance by ICE, Plaintiffs filed a Motion to Ascertain Status on April 16, 2013.  (Dckt. 246.)   In that Motion, Plaintiffs described the categories of outstanding discovery and Plaintiffs' counsel's continued efforts to conference with counsel for ICE to gain compliance with ICE's discovery obligations.

On April 26, the Court scheduled a case management conference and ordered counsel to be prepared to discuss the current status of ICE's and ICE Defendants' document production, including the fourteen categories of outstanding discovery materials.  (Dckt. 249.)  During the teleconference, held on May 3, 2013, counsel for ICE and the ICE Defendants reported to the Court that a substantial amount of responsive information had yet to be produced.  Counsel for ICE, in a number of instances, were unable to state the present custodian of the as-yet

unproduced information or commit to a schedule for production of the remaining information. (*See* Dckt. 251 at 3.)

Following the case management conference, on May 9, the Court issued an Order granting in part Plaintiffs' Motion for An Order to Show Cause and setting a show cause hearing for May 24 at which ICE and ICE Defendants were to appear and produce witnesses who would testify under oath regarding the location and custodian of unproduced documents, reasons why the information had not yet been produced, and any cause why appropriate sanctions should not issue. (Dckt. 251.)

On May 24, 2013, the Court held a three-hour hearing at which ICE called two witnesses to testify regarding the status of ICE's actions to collect and produce more than a dozen categories of documents. The parties introduced 13 exhibits, and the witnesses were questioned by both the Court and counsel for Plaintiffs. Mr. Whitted, counsel and witness for ICE, testified that ICE had not produced all of the documents called for by the May 17, 2012 subpoena, that, in some instances, representations made by ICE in its pleadings to the Court regarding the status of production and location of documents were not true and that, with respect to ICE's obligation to produce email communications, ICE would not produce any email communication until each email had been reviewed by an attorney, but that attorneys had only been assigned to begin the review project just a few weeks prior to the hearing. Neither of ICE's witnesses had any knowledge of the collection of any documents from ICE Defendants themselves.[2]

Following the hearing, on June 17, 2013, the Court ruled on the remainder of Plaintiffs' Motion for Sanctions, finding that "ICE and the ICE Defendants have failed to search for and produce responsive documents with the diligence that the Rules require, that they have failed to

---

[2] Although counsel for ICE Defendants chose not to call them to testify, most of the ICE Defendants also personally attended the hearing.

5

comply with a previous order of the Court ordering such production by October 15, 201[2], and that this failure was not substantially justified." (Dckt. 266 at 5.) Accordingly, the Court ordered that: "Pursuant to Rule 37(b)(2)(c), nonparty ICE shall pay to Plaintiffs their reasonable attorneys' fees and expenses incurred with respect to Plaintiffs' motion to compel production of documents (Dckt. 158) and Plaintiffs' motion for an order to show cause and for sanctions (Dckt. 201)." (Dckt. 266 at 5.)

The more than year-long delay of production of responsive documents by ICE Defendants and ICE has brought discovery in this case nearly to a standstill. Because ICE's noncompliance with discovery obligations has spanned numerous discovery requests, raised a number of legal issues, and stretched on for months and months, Plaintiffs' counsel has participated in numerous teleconferences with ICE and exchanged correspondence regarding ICE's and the ICE Defendants' failure to produce discovery material.[3] In addition, ICE Defendants' shifting position on discovery issues has required additional efforts by Plaintiffs' counsel. For instance, although Mr. Kennedy represented to Plaintiffs' counsel in October 2012 that ICE Defendants' personal email would be searched for responsive documents, Mr. Roden informed Plaintiffs' counsel in May 2013 that no such search had been done and that ICE Defendants were now taking the position that they would not conduct such a search. Likewise, ICE's representations to the Court and to Plaintiffs' counsel about the completeness of ICE's

---

[3] Written correspondence regarding ICE's discovery deficiencies related to Plaintiffs' Motion to Compel and Motion for Sanctions, excluding email communications, includes: June 25, 2012 (Mr. Kennedy to Mr. Piers, Mr. Behar, Ms. Miara, and Ms. Hendrickson re: ICE defendants' unwillingness to produce documents); July 11, 2012 (Ms. Hendrickson to Mr. Kennedy re: ICE and ICE Defendants' failure to produce any documents); September 27, 2012 (Ms. Hendrickson to Mr. Kennedy re: ICE search for responsive ESI); October 1, 2012 (Ms. Hendrickson to Mr. Kennedy re: improperly redacted documents produced by ICE); October 9, 2012 (Ms. Hendrickson to Mr. Ohrvall re: redacted documents produced by ICE); January 11, 2013 (Ms. Miara to Mr. Roden re: ICE's failure to produce documents and ESI); March 21, 2013 (Mr. Roden to all counsel re: ICE and ICE defendants' production of documents); and April 15, 2013 (Ms. Hendrickson to Mr. Roden re: responsive documents not yet produced).

6

production have been inaccurate, forcing Plaintiffs' counsel to repeatedly review and analyze documents produced by ICE (including duplicates and redacted documents[4]) to compare those documents to the (false) representations made by ICE. *See, e.g.,* Dckt. 216-1 (Federal Defendants' Response to Plaintiffs' Motion for Order to Show Cause, representing, *inter alia,* that all investigative records of the Office of Professional Responsibility and Office of Civil Rights/Civil Liberties "have been provided"); Dckt. 246-2 (March 21, 2013 letter from Mr. Roden to all counsel re: production of documents, representing ICE's production is complete: "we believe this represents everything that is presently outstanding with the exception of the requested emails.")[5]

Rather than conducting its own diligent search for potentially responsive documents, ICE counsel has essentially forced Plaintiffs' counsel to investigate and educate it about the Agency's record-keeping system, documents that it regularly maintains in Nashville and across the country, and materials produced by ICE in related litigation. ICE's recalcitrance has been enormously time consuming and labor-intensive for Plaintiffs' counsel, and has substantially increased Plaintiffs' attorneys' fees and costs in this litigation.

---

[4] Throughout the course of this discovery dispute, ICE repeatedly made representations about the completeness of its production by reference to the number of pages of documents that had been produced. However, the numbers provided were artificially inflated by ICE's production of thousands of pages of print-outs of pleadings and docket entries, and by ICE's and the ICE Defendants' churning of the same documents over and over. This has required Plaintiffs' counsel to analyze and compare the documents produced repeatedly in order to sort out what unique documents have, in fact, been produced. The heavy redaction of documents produced by ICE has been another persistent problem, requiring teleconferences, emails and even re-production by Plaintiffs to ICE of redacted documents for their redaction. Despite these repeated efforts, even the text of documents for which ICE has made an effort to remove redactions remains largely or entirely obscured.

[5] As was demonstrated at the May 24 hearing, these statements were both plainly untrue. Mr. Whitted admitted that complete records of the Office of Professional Responsibility and Office of Civil Rights/ Civil Liberties had not been fully produced as of November 2012 and that ICE's production of documents, beyond the outstanding email, was not complete.

7

## II.      Award of Fees and Expenses

Pursuant to this Application, Plaintiffs' counsel collectively seek $81,498 in attorneys' fees associated with Plaintiffs' Motion to Compel Production of Documents and Motion for an Order to Show Cause, including time spent drafting, reviewing, editing or otherwise preparing the relevant motions; analyzing ICE documents for purposes of drafting the motions; conferencing with counsel for ICE; and preparing for and attending Court hearings on ICE discovery issues.   Likewise, Plaintiffs' counsel seek $1,461.70 in costs associated with the Motions.   In addition, Plaintiffs' counsel seek $2,445 in attorneys' fees for preparation of the instant Application.   As explained below, these fees and costs are imminently reasonable.

### A.      Legal Standard for Award of Attorneys' Fees and Expenses

Parties seeking an attorneys' fee award must: (a) provide "evidence supporting the hours worked and rates claimed" and (b) demonstrate that the requested fee award is "reasonable." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1402 (6th Cir. 1995).  The first prong of the test is met by submitting invoices with a declaration filed with the Court.   *Id. See also Cummings Inc. v. BP Prods. N. Am., Inc.,* Nos. 3:06-0890, 3:07-0834, 2010 WL 796825, *3 (M.D.Tenn. Mar. 3, 2010).  The second prong of the test requires application of the lodestar method. *Cummings,* 2010 WL 796825 at *3. "A reasonable hourly rate is determined by considering the skill, experience, and reputation of the attorneys involved and the market in which they practice." *Id.* (internal citations omitted.) "If the requested fee is essentially in line with the lodestar, then there is a strong presumption that the requested fee is reasonable and recoverable." *Id.*[6] "Downward adjustments to the lodestar are 'applied only

---

[6] In addition to the lodestar analysis, the court may also consider any relevant *Johnson* factors.  *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)(citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).  Those factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the

in rare and exceptional cases where specific evidence in the record requires it.'" *Ibarra v. Barrett,* No. 3:05-0971, 2008 WL 2414800, *4 (M.D.Tenn. June 12, 2008)(citing *Isabel v. City of Memphis,* 404 F.3d 404, 416 (6th Cir. 2005)). *See also Geier v. Sundquist,* 372 F.3d 784, 793 (6th Cir. 2004) (adjustments to the lodestar are only proper in "rare" and "exceptional" cases).

Likewise, awards of attorneys' fees under Federal Rule of Civil Procedure 37 are similarly made when counsel can establish that the rates sought are reasonable. *See Moore v. Weinstein Co., LLC,* No. 09-CV-0166, 2012 WL 1657968 (M.D.Tenn. May 11, 2012)(approving of fee award under Fed.R.Civ.P. 37).

**B.    Plaintiffs' Attorneys' Fees are Reasonable.**

**1.    As the Invoices Submitted by Plaintiffs' Counsel Establish, the Hours Worked Are Reasonable.**

Plaintiffs' counsel is entitled to be compensated for all hours "reasonably expended." *Hensley v. Eckerhart,* 461 U.S. 424, 431 (1983). In support of their Application, Plaintiffs' counsel has submitted three declarations attaching 14 pages of contemporaneous, detailed time records that are sufficient for the Court to determine the tasks completed by each firm. *Cf.* Local Rule 54.01(b)(requiring an affidavit of counsel that specifies, *inter alia,* the number of hours spent on each aspect of the case and the rates customarily charged for that work). *See* Declaration of Tricia Herzfeld, Declaration of José Behar, and Declaration of Andre Segura, attached hereto as Exs. 1, 2, and 3. The time records specify, for each entry, the date that the

---

preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* The Sixth Circuit has recognized that often these factors are naturally blended into the reasonableness analysis, *Paschal v. Flagstar Bank,* 297 F.3d 431, 435 (6th Cir. 2002), and, because Plaintiffs' Application pertains to an award of fees under Fed.R.Civ.P. 37 rather that at the conclusion of the litigation, many of the *Johnson* factors do not apply to this Application.

time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and the specific tasks completed. Plaintiffs' counsel's time records, along with the declarations, provide the "evidence supporting the hours worked and rates claimed" pursuant to Plaintiffs' Application. *Building Service Local 47,* 46 F.3d at 1402 (affirming fee award when affidavit of attorney, copy of billing records, and memorandum in support of application was adequate documentation in support of award).

Furthermore, Plaintiffs' counsel has also sought to ensure that the fee request is appropriate and reasonable in light of the Court's June 17, 2013 Order on Plaintiffs' Motion for Sanctions. (Dckt. 266.) That Order provided for payment of Plaintiffs' fees and expenses associated with Plaintiffs' Motion to Compel Production of Documents and Plaintiffs' Motion for An Order to Show Cause and for Sanctions. *Id.* Accordingly, Plaintiffs are hereby seeking payment for 231 hours of attorney time and 41 hours of paralegal time associated with the Motions. *See* Exs. 1, 2, and 3.[7] These hours include time spent drafting, reviewing, editing, or otherwise preparing the relevant motions; analyzing ICE documents for purposes of drafting the motions; conferencing with counsel for ICE; and preparing for and attending Court hearings on ICE discovery issues. Counsel has exercised appropriate "billing judgment," which is "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," *Hensley,* 461 U.S. at 434, in order to limit the scope of this Application to work related to the Motions set out in the Court's order. Plaintiffs have not included in this Application a significant amount of time spent by counsel on discovery matters related to ICE, including strategy conferences among counsel, review and organization of documents produced by ICE, and time spent discussing ongoing issues such as the status and adequacy of discovery

_____

[7] As explained further in Section B(3) herein, Plaintiffs also hereby seek limited fees for time spent preparing the instant Application.

responses.[8]  Plaintiffs have also exercised billing judgment by limiting the fees sought in this Application to the time of one attorney per law firm for attendance at Court hearings, conferences with ICE, and most conferences among co-counsel, even where multiple attorneys from each firm were present.

The fees requested by Plaintiffs in this Application are both reasonable and properly limited to the motions identified in the Court's Order.  For example, in *Moore v. Weinstein Co., LLC,* in reviewing the time entries to be properly considered as related to the Motion to Compel at issue in that case, Judge Trauger concluded that time beyond merely researching and drafting the motion to compel are recoverable under Federal Rule of Civil Procedure 37(a)(5)(A) "because good faith efforts to identify and resolve discovery disputes are a necessary precondition to recovering expenses and attorney's fees for an opposing party's discovery failures."  *Moore,* 2012 WL 1657968 at *5 (citing cases).  In *Moore,* like here, the contentious nature of the discovery disputes between the parties and the sanctioned party's delay in producing discovery justified the scope of fees sought by the petitioning party:

> Here the Magistrate Judge originally deferred decision on the issues raised by the original Motion to Compel, presumably in the hope that the plaintiffs would honor their discovery obligations without further court intervention.  Had the plaintiffs honored those obligations, the issue would not have come before this court again.  Instead, the plaintiffs chose to engage in a campaign of delay and obfuscation, requiring the defendants to spend significant good-faith efforts "policing" the plaintiffs before being forced to renew the Motion to Compel to obtain the long-requested discovery.  Accordingly, it was not clear error for the Magistrate Judge to find that, under the exceptional circumstances presented by this case, efforts undertaken with respect to the initial Motion to Compel and/or as a necessary precursor to the Renewed Motion to Compel were properly reimbursable pursuant to Rule 37(a)(5)(a).

*Moore,* 2012 WL 1657968 at *6.

---

[8] Although they are not included in the instant Application, such fees are reasonably attributable to work performed by Plaintiffs' counsel in this case, and Plaintiffs intend to seek recovery of these fees and costs under 42 U.S.C. §1988 at the conclusion of this litigation.

As in *Moore,* ICE and ICE Defendants' prolonged recalcitrance and unwillingness to perform the due diligence required to comply with their discovery obligations has exponentially increased the number of hours Plaintiffs' counsel has been forced to spend litigating the discovery deficiencies at issue in Plaintiffs' Motion to Compel and Motion for Sanctions. *First,* ICE Defendants have taken a legally untenable position – in direct conflict with controlling Sixth Circuit precedent, *see In re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir. 1995) - that they are not obligated to produce documents that are in their possession. *Second,* ICE, for its part, after instructing its employees not to produce responsive documents, has put up one roadblock after another to discovery in this case, causing significant delay and expense. Among other things, ICE counsel failed to comply with the vast majority of document requests in the subpoena, forcing Plaintiffs' counsel to repeatedly request outstanding materials, investigate and disprove unsubstantiated assertions that the production was complete, and "police" ICE counsel to prompt compliance with ICE's discovery obligations, over a period of more than twelve months. In light of the extensive amount of work that ICE counsel has forced Plaintiffs' counsel to undertake, a fee award of $81,498 for time associated with Plaintiffs' Motion to Compel and Motion for Sanctions is reasonable under the unique circumstances of this case. *Cf. Envirosource, Inc. v. Horsehead Resource Dev. Co., Inc.,* 981 F.Supp. 876 (S.D.N.Y. 1998)(awarding a discovery sanction of $84,950 in attorneys' fees to plaintiffs' counsel who spent 18 months trying to obtain compliance with discovery requests and court's discovery orders).

Moreover, Courts have long recognized that when a party engages in an obstinate defense, it cannot later claim that the time the other party spent responding to their defense tactics was unnecessary or that counsel should not be compensated for such time. *See City of Riverside v. Rivera,* 477 U.S. 561, 580 n.11 (1986)("The government cannot litigate tenaciously

and then be heard to complain about the time necessarily spent by plaintiff in response.")(internal citations omitted). "[W]hen it comes time for the court to award the fees, it must not penalize [Plaintiff]'s attorney for responding to [Defendant]'s defense" *Diettrich v. Northwest Airlines,* 967 F.Supp. 1132, 1134-35 (E.D.Wis. 1997), *rev'd on other grounds* 168 F.3d 961 (7th Cir. 1999); *Mcgowan v. King, Inc.,* 661 F.2d 48, 51 (5th Cir. 1981)(commenting that Plaintiffs' counsel "did not inflate this small case into a large one; its protraction resulted from the stalwart defense.").

The Sixth Circuit has recognized that the same principle applies to discovery violations under the Federal Rules of Civil Procedure: "Every violation of the Rules has consequences; the question is who will bear them. Too often the consequences are borne only by the innocent party, who must live with the violation (here, a useless report) or else pay to brief and argue a motion to compel the offending party to do what the Rules required it to do all along. Better instead to make the offending party pay a price, and thereby also to remind others that they, too, should comply the first time." *R.C. Olmstead, Inc., v. CU Interface, LLC,* 606 F.3d 262, 277-78 (6th Cir. 2010).

In short, the hours expended in this discovery dispute are imminently reasonable given the time and labor required because of ICE and ICE Defendants' recalcitrance. Furthermore, despite ICE and ICE Defendants' obstructionism, and although counsel represent different sets of Plaintiffs in this case, requiring the involvement of multiple Plaintiffs' attorneys in discovery issues, Plaintiffs' counsel have attempted to coordinate discovery efforts to maximize efficiency, including by serving a single set of discovery requests to ICE Defendants and a single subpoena to ICE, as well as by using one or two attorneys as point people for discovery disputes, rather than involving all of Plaintiffs' counsel in repeated efforts to gain ICE's compliance. Plaintiffs'

counsel have also allocated and coordinated work assignments between attorneys and paralegals, when reasonably feasible, so as to promote efficiency and avoid unnecessary duplication of effort. Accordingly, the number of hours necessary to litigate Plaintiffs' Motion to Compel and Motions for Sanctions stems not from the manner in which the case is staffed, but rather from the manner in which ICE and ICE Defendants have utterly ignored their discovery obligation, time and time again. The fees awarded to Plaintiffs should reflect the reasonable time spent litigating a prolonged and time-consuming discovery dispute.

## 2. The Hourly Rates Sought by Plaintiffs' Counsel Are Reasonable.

In determining the lodestar amount, fees "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). *See also, Geier,* 372 F.3d at 791 (courts use as a guideline the prevailing market rate, which is the rate that lawyers of comparable skill and experience can reasonably expect to command). Generally, district courts are free to look at a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases. *See Sigley v. Kuhn,* 205 F.3d 1341, *7 (6th Cir. 2000). Although the use of the local forum market rates generally is an acceptable approach to set the hourly rate awarded to counsel, when, after a good-faith effort, local counsel cannot be retained, or non-local counsel possesses specialized expertise in the matter to be litigated, a court may look beyond the local forum market rates to rates in a counsel's home practice area. *Id.* A court may award a higher hourly rate for an out-of-town counsel when (1) hiring the out-of-town specialist was reasonable in the first instance, and (2) if the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation. *Brian A. v. Hattaway,* 83 F.App'x 692, 694 (6th Cir. 2003). In this case, as the evidence presented in this Application establishes, hiring out-of-

14

town counsel was reasonable and necessary where Nashville counsel could not be located to litigate the case, and the hourly rates sought by Plaintiffs' counsel are reasonable.

> **a.** **Hiring counsel from outside Nashville with expertise in civil rights and immigrants' rights litigation was necessary when local counsel were not available to litigate the case.**

Plaintiffs' retention of out-of-town counsel to litigate this case was reasonable. The fourteen Plaintiffs in this case are represented by a combination of local counsel in Nashville, lawyers at the ACLU Immigrants Rights Project ("ACLU-IRP") in New York and Atlanta, and counsel at Hughes Socol Piers Resnick & Dym, Ltd. ("HSPRD"), a Chicago law firm that specializes in civil rights litigation. Both Ms. Herzfeld and Mr. Segura testified that, in light of the large number of parties, extensive discovery, and complexities of factual and constitutional issues, a firm with sufficient experience and resources was required to bring Plaintiffs' claims. *See* Exs. 1 at ¶¶ 4,5; Ex. 3 at ¶¶22, 26-28. Ms. Herzfeld, who initially represented Plaintiffs at the ACLU of Tennessee, attested that, although she preferred a Nashville-area firm with sufficient experience and resources, no Nashville counsel were available. *See* Ex. 1 at ¶6. Ms. Herzfeld sought local Nashville counsel for months, and her requests for representation were unanimously rejected. *See id.* In particular, Ms. Herzfeld contacted numerous law firms in Nashville to assist in this case and, over the course of several months, each firm declined to take on the case. *See id.* Additionally, the ACLU-IRP, which possesses special expertise in civil rights litigation involving immigrants' rights, did not have the staffing and financial resources to litigate the case without assistance of a law firm. *See* Ex. 1 at ¶7 and Ex. 3 at ¶¶24, 26, 29. After determining that Nashville counsel was not available, Mr. Segura contacted HSPRD, which agreed to participate in litigation of the case. "A good faith effort to find local counsel is all that is necessary, lest the meticulous generation of a comprehensive log of inquiries deter plaintiffs

from bringing worthy discrimination suits, frustrating the rationale for statutes enabling private civil rights suits." *Communities for Equity v. Michigan High School Athletic Assoc.,* 1:98-CV-479, 2008 WL 906031 (W.D. Mich. Mar. 31, 2008)(internal citations omitted).

Courts in the Sixth Circuit have awarded rates outside the local, forum market rate in cases that involve similarly complex issues and local counsel were not available. *See, e.g., Brian A.,* 83 F.App'x at 694 (approving use of New York rates for out-of-town counsel in case that challenged constitutionality of foster care system); *Sigley,* 205 F.3d at *7 (rejecting argument that rates should have been limited to local forum rate when the issues litigated in the case were complex, making it difficult to find competent and skilled counsel in law firms willing to undertake the risk and expense of pursuing the civil rights action); *Carroll v. United Compucred Collections, Inc.,* No. 1:99-00152, 2008 WL 3001595, *4 (M.D. Tenn. July 31, 2008) (awarding Chicago and Philadelphia rates where "there were no local attorneys with the resources, expertise, or willingness to litigate" the case).

The representation of fourteen plaintiffs by three firms, including firms outside Nashville, is entirely reasonable in light of the discovery demands of this case, the factual and legal complexity of the issues involved, and the unavailability of competent Nashville counsel.

> **b.** **Counsel's hourly rates are at or below the prevailing market rate in the relevant legal communities.**

Moreover, the rates charged by Plaintiffs' Nashville, Chicago, New York, and Atlanta counsel are reasonable. Where an out of town attorney is brought in to litigate a case, the court may look to his or her standard rate in the community where that attorney normally practices as a reflection of that attorney's training, background, expertise, and skill. *Sigley,* 205 F.3d at *7. *See also McHugh v. Olympia Entertainment, Inc.,* 37 Fed. Appx 730, 740 (6th Cir. 2002)*.* Here,

16

Plaintiffs have presented considerable evidence that the hourly rates requested for their counsel are reasonable in light of the prevailing rates in the relevant legal communities.

### (1)     Ozment Law Office

Plaintiffs have provided evidence that the hourly rates requested for attorneys at the Ozment Law Office are reasonable in light of the market conditions in Nashville, Tennessee for attorneys who litigate cases with comparable skill, expertise, and reputation. *First,* Ms. Herzfeld testified that the rates sought by Ozment Law Office ($325 per hour for Ms. Herzfeld and $195 per hour for Mr. Free) are reasonable and fall squarely within the range of market rates charged in Nashville, Tennessee by attorneys with similar experience. *See* Ex. 1 at ¶14. *Second*, the rates sought by Ozment Law are comparable or lower than rates routinely awarded by courts in the Middle District of Tennessee to Nashville-area counsel. *See, e.g., BKB Props, LLC v. SunTrust Bank,* No. 3:08-cv-00529, 2010 WL 200750, *7-8 (M.D.Tenn. Jan. 13, 2010)($330 per hour and $170 per hour reasonable); *Cummings,* 2010 WL 796825 at *4 ($400-460 per hour for experienced partners and $215-$270 per hour for associates in 2009 reasonable); *Geier,* 372 F.3d at 791-92 (vacating M.D.Tenn. award of $250 per hour when court failed to consider plaintiffs' evidence that higher rates were appropriate). *Finally*, according to the 2008 National Law Journal Billing Survey, the median hourly billing rates for partners at Nashville firm Bass, Berry & Sims is $420 per hour and a median hourly billing rate for associates is $245 per hour. *See* 2008 National Law Journal Survey, attached hereto as Exhibit 4.[9] The rates sought by Ms.

---

[9] Each year, the National Law Journal publishes the average billing rates of major private law firms. Courts—including in this district and Circuit—frequently reference these surveys in determining the hourly rate to be used in awarding attorney's fees, including fees to public interest and legal services attorneys. *See, e.g., Siddle v. Crants*, Nos. 3:09-cv -175 & 3:09-cv-1137, 2013 WL 1245678, at *16 n.16 (M.D. Tenn. Mar. 26, 2013); *Villegas v. Metro. Govt of Davidson Cnty./Nashville-Davidson Cnty. Sheriff's Office,* No. 3:09-cv-219, 2012 WL 4329235, at *7 (M.D. Tenn. Sept. 20, 2012); *Cmtys. for Equity  v. Michigan High Sch. Athletic Ass'n,* No. 1:98-CV-479, 2008 WL 906031, at *12 (W.D. Mich. Mar. 31, 2008);   *Nat'l Foreign Trade Council, Inc. v. Giannoulias*, No. 06 C 4251, 2007 WL 2688454, at

Herzfeld and Mr. Free for work performed in 2012 and 2013 are lower than the rates provided in the survey for work performed five years earlier, and they imminently reasonable in light of Ms. Herzfeld and Mr. Free's experience, *see* Ex. 1 at ¶¶2-3, 14, and median billing rates in the Nashville market.

### (2)  Hughes Socol Piers Resnick & Dym, Ltd.

Plaintiffs have also provided evidence that the hourly rates requested for attorneys at HSPRD are reasonable in light of the market conditions in Chicago, Illinois for attorneys who litigate cases with comparable skill, expertise, and reputation.  *First,* the rates sought for HSPRD counsel range from $440 per hour for Mr. Behar to $355 for Ms. Hendrickson and $300 for Ms. Miara and Ms. Lederer.  *See* Ex. 2 at ¶20.  (The hourly billing rates sought for HSPRD's time in 2012 are slightly lower.  *See id.*  Mr. Behar testified that the rates sought by HSPRD are the standard billing rates for matters that HSRPD handles on an hourly basis and are reasonable, and even lower, than the rates of most attorneys and paralegal professionals in the Chicago area with comparable experience and expertise.  *See* Ex. 2 at ¶23.  *Second*, HSPRD has proffered testimony from another Chicago lawyer, Mr. Robert Graham, who is familiar with the Chicago market rates and who has testified that the rates requested are entirely reasonable.  *See* Declaration of Robert Graham, attached as Exhibit C to Ex. 2 hereto.  *Third*, the rates sought by HSPRD are comparable or lower than rates routinely awarded to Chicago-area counsel.  *See e.g., Jimenez v. City of Chicago*, 09-C-8081, 2012 WL 5512266 (N.D. Ill. Nov. 14, 2012) (awarding hourly rates ranging from $425 to $495 for senior civil rights litigators,  $300 for a 2004-graduate attorney, and $125 for paralegals); *Morjal v. City of Chicago, Ill.*, 12 CV 185, 2013 WL 2368062 (N.D. Ill. May 29, 2013) (awarding hourly rate of $400 for partner and recognizing

---

*2 (N.D. Ill. Sept. 7, 2007).  The 2008 Survey is the most recent year to include a Nashville-area law firm in survey.

prior awards ranging from $395 to $425); *Stephens v. Cirrincione*, 11-C-6354, 2012 WL 2872448 (N.D. Ill. July 11, 2012) (awarding hourly rate of $425 per hour for senior litigator based on inter alia, the court's "review of similar cases pending in [the Northern District of Illinois]"); *Flaherty v. Marchand*, 284 F. Supp. 2d 1056, 1065 (N.D. Ill. 2003) (awarding hourly rates of $450 for lead senior attorney and $200 for junior attorney with two years of experience). *Finally*, according to the 2012 National Law Journal Billing Survey, HSPRD's rates are below the median hourly billing rate at several Chicago firms, which bill in a range for a median hourly rate of $505-560 per hour for partners and a median hourly rate of $350-305 per hour for associates. *See* 2012 National Law Journal Survey, attached as Exhibit 5 hereto. Thus, HSPRD's rates are below the Chicago market rates reflected in the National Law Journal survey and are reasonable in light of the prevailing billing rates in the Chicago market.

### (3)    ACLU Immigrants Rights Project

Finally, Plaintiffs have provided evidence that the hourly rates requested for attorneys at the ACLU Immigrants Rights Project are reasonable. ACLU-IRP counsel representing Plaintiffs are Mr. Andre Segura, located in New York, whose hourly billing rate is $400 per hour, and Mr. Cox, located in Atlanta, Georgia, whose hourly billing rate is $265. (ACLU-IRP billing rates for work performed in 2012 are slightly lower.) *See* Ex. 3 at ¶31. Mr. Segura's billing rate is reasonable in light of the market conditions in New York City for attorneys who litigate cases with comparable skill, expertise, and reputation. *First,* Mr. Segura testified that the rates sought for his work is reasonable and within the range of market rates charged in New York City by attorneys with similar experience. *See* Ex. 3 at ¶¶31-32. *Second*, ACLU-IRP has proffered testimony from another New York lawyer, Ms. Elizabeth Saylor, who is familiar with the New York market rates and has testified that the rates requested are entirely reasonable. *See*

Declaration of Elizabeth Saylor, attached as Exhibit C to Ex. 3 hereto. *Third*, the rates sought by Mr. Segura are comparable or lower than rates routinely awarded by courts to lawyers that practice in the Southern District of New York. *See, e.g., Rozell v. Ross-Holst,* 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $600 per hour for partners and $350 for associates who had 5-7 years of experience at the time of work performed from 2006 to 2008); *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05-6757, 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009) (awarding rates of $435 per hour for attorneys with nine years of experience and $365 per hour for attorneys with five years of experience); *Vilkhu v. City of New York*, No. 06-2095, 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009) (noting in 2009 that a "review of precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time"), *vacated and remanded on other grounds*, 372 Fed. Appx. 222 (2d Cir. 2010). *Finally*, according to the 2012 National Law Journal Billing Survey, Mr. Segura's rates are below the median rate at several New York City law firms, which bill at rates ranging from a median hourly rate of $895-775 per hour for partners and a median hourly rate of $585-530 per hour for associates. *See* Ex. 5. Mr. Segura's rates are below the market rates reflected in the National Law Journal survey and are reasonable in light of the prevailing billing rates in the New York market.

In addition, Mr. Cox's hourly billing rate is reasonable in light of the market conditions in Atlanta, Georgia for attorneys who litigate cases with comparable skill, expertise, and reputation. ACLU-IRP has proffered testimony from another Atlanta lawyer, G. Brian Spears, who is familiar with Atlanta market rates and has testified that the rates requested are entirely reasonable. *See* Declaration of G. Brian Spears, attached as Exhibit D to Ex. 3 hereto.

20

Moreover, according to the 2012 National Law Journal Billing Survey, the median hourly billing rate at the Atlanta firm of McKenna Best & Friedrich is $550 per hour for partners and is $395 for associates. *See* Ex. 5. Mr. Cox's rates are below the market rates reflected in the National Law Journal survey and are reasonable in light of the prevailing billing rates in the Atlanta market.

### 3. Counsel's Fees Incurred in Preparing The Instant Fee Application Are Properly Compensable.

Time spent preparing the instant Application is also properly compensable. *See Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986) (collecting cases) ("The cases from this and other circuits uniformly hold that a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over, although in the private market place, lawyers do not usually charge, and clients do not usually pay, for the time it takes lawyers to calculate their fees.").

Plaintiffs' counsel have applied billing judgment and have capped their fees sought at 3% of the attorneys' fees sought under Federal Rule of Civil Procedure 37. Although Plaintiffs' counsel spent more than 95 hours preparing the instant Application (thereby incurring approximately $30,000 in attorneys' fees), they hereby seek only $2445 in attorneys' fees for time spent preparing the Application, which represents 3% of the $81,498 in attorneys' fees associated with their Motion to Compel and Motion for Sanctions. *See Coulter,* 805 F.2d at 151 (noting, in the absence of unusual circumstances, the hours for preparing and litigating fee petition should not exceed 3% of the hours in the main case when the case is decided without a trial and 5% of the hours when a trial is necessary). Although this Application includes the costs of preparing this petition, Plaintiffs reserve their right to supplement counsel's fees and expenses

21

incurred in defending this Application.

        **C.**    **Plaintiffs' Counsel's Expenses are Reasonable.**

In its June 17 Order, the Court also provided for an award for expenses associated with Plaintiffs' Motion to Compel Production and Motion for an Order to Show Cause. (Dckt. 266.) "[C]ertain out-of-pocket costs incurred by the plaintiffs' attorneys, including transportation, lodging, parking, food and telephone expenses" may be awarded. *Palmigiano v. Garrahy,* 707 F.2d 636, 637 (1st Cir. 1983). "Properly included in an award of attorneys' fees are costs and fees for paralegals, out-of-pocket expenses including travel, telephone, mailing, copying and computerized legal research expenses." *Sure Safe Indus. v. C&R Pier Mfg.,* 152 F.R.D. 625, 626 (S.D.Cal. 1993). Accordingly, Plaintiffs' Application seeks $1,461.70 in expenses, which are limited to travel costs and expenses associated with attending the May 24, 2013 sanctions hearing. The HSPRD and ACLU-IRP Statements of Expenses, *see* Exs. D to Ex. 2 hereto and Ex. B to Ex. 3 hereto, set out itemized costs, which are reasonably related to Plaintiffs' Motion for Sanctions.

## CONCLUSION

Wherefore, for all the reasons stated above, Plaintiffs respectfully request that the Court enter an Order awarding counsel fees and expenses in the following amounts:

| Firm | Attorneys' Fees | Expenses | Total |
|------|-----------------|----------|-------|
| Ozment Law Office | $4,867.50 | $0.00 | $4867.50 |
| HSPRD | $69,058.00 | $921.03 | $69,979.03 |
| ACLU-IRP | $10,017.50 | $540.67 | $10,557.17 |

Dated：July 3, 2013

Respectfully submitted,

/s/ Cara A. Hendrickson
One of Plaintiffs' Attorneys

| | |
|---|---|
| Elliott Ozment | Andre Segura |
| Tricia Herzfeld | Justin Cox |
| R. Andrew Free | Lee Gelernt |
| Law Offices of Elliott Ozment | ACLU Foundation Immigrants' Rights Project |
| 1214 Murfreesboro Pike | 125 Broad Street, 18th Floor |
| Nashville, TN 37217 | New York, New York 10004 |
| T: (615) 321-8888 | T: (212) 549-2660 |
| *elliott@ozmentlaw.com* | *asegura@aclu.org* |
| *tricia@ozmentlaw.com* | *jcox@aclu.org* |
| *afree@ozmentlaw.com* | *lgelernt@aclu.org* |

Cecilia D. Wang
ACLU Foundation Immigrants' Rights
Project
39 Drumm Street
San Francisco, California 94111
T: (415) 343-0775
*cwang@aclu.org*

Thomas H. Castelli
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
T: (615) 320-7142
*tcastelli@aclu-tn.org*

ATTORNEYS FOR JAVIER ORLANDO DERAS, JUAN BAUTISTA MENDEZ MARTINEZ, IASIAS RAXCACO CAJBON, EDUARDO CAHUEC GARCIA, MARVIN BENJAMIN LOPEZ RAXCACO, COSMER JUAREZ CAJBON, CARLOS ROBERTO MENDEZ MARTINEZ, KIMBERLY CUSTIS, AND SHANNON NORIEGA LUCAS, as parent and next friend of her child, B.B.

23

Matthew J. Piers
José J. Behar
Cara A. Hendrickson
Jenna L. Miara
Caryn C. Lederer
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W. Madison St., Suite 4000
Chicago, IL 60602
T: (312) 580-0100
*mpiers@hsplegal.com*
*jbehar@hsplegal.com*
*chendrickson@hsplegal.com*
*jmiara@hsplegal.com*
*clederer@hsplegal.com*

Elliott Ozment
Tricia Herzfeld
R. Andrew Free
Law Offices of Elliott Ozment
1214 Murfreesboro Pike
Nashville, TN 37217
T: (615) 321-8888
*elliott@ozmentlaw.com*
*tricia@ozmentlaw.com*
*afree@ozmentlaw.com*

ATTORNEYS FOR ANGEL ENRIQUE NUNEZ ESCOBAR, DAVID SALGADO FIGUEROA, GERARDO MORTEO MENDEZ, JESUS ANTONIO SANCHEZ VILLALOBOS, AND JORGE PALENCIA SARMIENTO

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document will be served to counsel listed below by CM/ECF on July 3, 2013.

Sam Delk Kennedy, Jr.
Michael L. Roden
Office of the United States Attorney (MDTN)
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203-3870
Delk.kennedy@usdoj.gov
Michael.roden@usdoj.gov

Allison L. Bussell
Christopher M. Lackey
R. Alex Dickerson
Metropolitan Legal Department
P.O. Box 196300
Nashville, TN 37219
Allison.bussell@nashville.gov
Chris.lackey@nashville.gov
Alex.dickerson@nashville.gov

Richard C. Mangelsdorf, Jr.
D. Randall Mantooth
Leighann Ness
Leitner, Williams, Dooley, and Napolitan
414 Union Street, Suite 1900
Nashville, TN 37219
Chuck.mangelsdorf@leitnerfirm.com
Randy.mantooth@leitnerfirm.com
Leighann.ness@leitnerfirm.com

William Gerald McCaskill, Jr.
LeVan, Sprader, Patton & McCaskill PLLC
201 Fourth Avenue, N
Suite 1020
Nashville, TN 37219
jmccaskill@lsplaw.net

/s/ Cara A. Hendrickson
One of Plaintiffs' Attorneys

25