IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| ANGEL ENRIQUE NUÑEZ ESCOBAR, *et al.*, ) | |
| ) | |
| *Plaintiffs,* ) | Case No. 3:11-cv-994 |
| ) | |
| v. ) | Judge Campbell |
| ) | Magistrate Judge Bryant |
| LEE GAINES, *et al.*, ) | |
| ) | |
| *Defendants*. ) | Jury Demand |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT WEST'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and M.D. Tenn. L. R. 56.01, Plaintiffs respectfully submit their response in opposition to Defendant Paul West's Motion for Partial Summary Judgment, ECF No. 275, and state as follows:

**INTRODUCTION**

More than six months before the close of discovery, *see* ECF No. 267, ¶ 1, and not long after he received a notice for his own deposition, "Defendant Paul West d/b/a Defendant Crime Suppression Services (CSS)" has filed a premature and legally meritless motion for partial summary judgment.[1] In support, Defendants West and CSS offer only West's own self-serving, barebones declaration, which is flatly contradicted by the documentary evidence produced in discovery thus far. ECF No. 275-1. Based solely on this declaration, Defendants ask this Court to enter an order making seven factual and legal findings of "as a matter of law." ECF No. 275-3 at 7-8.

---

[1] Though Defendant West filed his motion on behalf of "Paul West d/b/a Crime Suppression Services" both West and Crime Suppression Services are defendants in this action (*see* ECF No. 206 ¶¶ 55-56). For purposes of clarity in this motion, Plaintiffs will refer to the motion as both defendants' motion.

Defendants' premature summary judgment motion should be denied pursuant to Fed. R. Civ. P. 56(d) because Plaintiffs must have an opportunity to obtain currently unavailable facts that are necessary to their response.[2] Plaintiffs have not yet deposed Mr. West, or any of the four other CSS employees who were present at the Clairmont Apartments during and after the raid on October 20, 2010. Nor have Plaintiffs deposed Defendant Tracy Hall, the Greystar regional manager with whom West met before the raid on the afternoon of October 20, 2010, and whom West called immediately after the raid. And Plaintiffs have still not had an opportunity to depose roughly a dozen federal law enforcement agents who participated in and supervised the Clairmont raid. Without this necessary discovery, Plaintiffs are unable to fully respond to Defendants' premature motion. It should therefore be denied.

In addition to being premature, Defendants' motion is also without legal merit and should be denied on that basis as well. Defendants West and CSS are not entitled to partial summary judgment because West's conclusory declaration does not carry their burden of showing that the record, viewed in a light most favorable to the Plaintiffs, presents no genuine issue of material fact as to Defendants' liability on Counts Six, Seven, Eight, and Nine of Plaintiffs' Second Amended Complaint. ECF No. 206.[3]

## BACKGROUND

Based on the pleadings and discovery that has been taken thus far in this litigation, Plaintiffs provide the following Background.

---

[2] Plaintiffs attach hereto a declaration of counsel describing with particularity the precise facts and forms of discovery necessary to respond to West's motion, as required by Fed. R. Civ. P. 56(d).

[3] While Defendants' Motion for Partial Summary Judgment purports seek an order that Plaintiffs have failed to state a claim under Fed. R. Civ. P. 12(b)(6), West's declaration precludes such an order, and the relief he seeks in his Memorandum of Law plainly demonstrate that Fed. R. Civ. P. 56 governs.

Defendants West and CSS provided armed security guards to patrol Clairmont twenty-four hours per day, seven days per week, pursuant to their contract with Greystar. Plaintiffs' Statement of Additional Facts That Require Denial of Summary Judgment (SAF) ¶ 1. CSS employees patrolled Clairmont in vehicles that were equipped with lights and sirens and were marked with a shield on the door that read "Crime Suppression Special Response Team." SAF ¶ 2. CSS employees wore dark blue uniforms with patches and carried radios, firearms, and handcuffs while patrolling Clairmont. SAF ¶ 3. West personally patrolled Clairmont while wearing a CSS uniform and with a firearm in October 2010. SAF ¶ 4. West's private security guard license expired on July 31, 2010. SAF ¶ 4.

West and other CSS officers met with members of Clairmont management and members of the Metropolitan Nashville Police Department ("MNPD") in advance of the raid. On October 6, 2010, West met with members of MNPD's Gang Task Force, Greystar employee Tracy Hall, and Greystar employee George Flores. SAF ¶ 8. The purpose of the October 6 meeting was to create a plan for identifying individuals that needed to be removed from Clairmont. SAF ¶ 9.

Between October 5 and October 9, 2010, Greystar employees vacated the Clairmont management office, leaving CSS employees as the only representative of management left on-site. SAF ¶ 10. As of October 9, 2010 CSS increased its presence at Clairmont to four officers per shift. SAF ¶ 11. On October 12, 2010, around 5:00am, CSS employees talked with MNPD officers at Clairmont. SAF ¶ 12. Also on October 12, CSS obtained ten keys to the Clairmont property from a Greystar employee. SAF ¶ 13. West and/or employees of CSS provided law enforcement officers from MNPD and/or ICE with license plate numbers of vehicles parked at the Clairmont Apartments. SAF ¶ 14. On the day of the raid, October 20,

2010, Paul West, along with other CSS employees, met with Triont employee Jim Jarrell and Defendant Tracy Hall at Clairmont. SAF ¶ 15.

CSS employees or agents also provided regular updates and surveillance reports to the managers of the Clairmont Apartments. SAF ¶ 5. CSS employees on site at Clairmont in October 2010 recorded all vehicles that entered and exited the property. SAF ¶ 6. CSS employees on site at Clairmont in October 2010 questioned individuals about their reasons for being on the property. SAF ¶ 7.

CSS officer Chris Graybill was at the Clairmont Apartments when law enforcement officers from ICE and MNPD arrived on the evening of October 20. SAF ¶ 16. CSS officers Mike Reeder, Wesley Ford, Chris Graybill, and Justin Mack were at Clairmont on October 20 when law enforcement officers from ICE and MNPD arrived. SAF ¶ 17. Reeder, Ford, Graybill, and Mack observed ICE and MNPD officers at the Clairmont Apartments during the raid. SAF ¶ 18.

Paul West relayed to Tracy Hall firsthand observations of the activities of law enforcement that occurred during the raid. SAF ¶ 19. He called Hall on October 20 at approximately 6:30 pm. SAF ¶ 20. During their phone call, he reported to Hall that ICE was on the Clairmont property with approximately 50 agents and 10 vans. SAF ¶ 21. He also reported to Hall that agents were stopping all persons on the Clairmont property to identify them. SAF ¶ 22. West reported to Hall that agents were kicking in doors of apartments for which they had warrants. SAF ¶ 23. Finally, West told Hall that ICE agents were on the Clairmont property for about an hour and a half, and that after ICE left the property was quiet. SAF ¶ 24.

West does not have knowledge of what the CSS officers who were working their shifts at Clairmont during the raid on October 20 know about the relevant facts in this case. SAF ¶ 25.

Daily Activity Logs of CSS officers on duty on October 20 do not reflect that they left the Clairmont property during the raid. Pltfs Response to Defendants' Statement of Facts (RDSF) ¶ 4. On October 21, 2010 Paul West called Stephanie Preciado and told her that "it is CRAZY at Clairmont." SAF ¶ 26.

Following the raid, CSS employees went door-to-door at the Clairmont apartments. SAF ¶ 27. When CSS officers went door to door, they told occupants that if they didn't have a lease they would be "ejected for trespass." SAF ¶ 28. CSS submitted an invoice for services including four on-site officers in marked patrol vehicles on Clairmont property 24 hours each day, 7 days a week, for the period of October 9-21, 2010. SAF ¶ 29.

## LEGAL STANDARD

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by demonstrating an absence of evidence to support the nonmoving party's case. *Id*. In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Pennington*, 553 F.3d at 450; *Van Gorder v. Grand Trunk Western Railroad, Inc*., 509 F.3d 265, 268 (6th Cir. 2007).

"Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case." *Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1195 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 n.5, 257 (1986) (stressing importance of allowing ample time for discovery); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 326 (1986) (same)). Because the nonmovant bears the burden of putting forward evidence to defeat a properly supported motion for summary judgment, it "follows that a grant of summary judgment is improper if the nonmovant is given an insufficient opportunity for discovery." *White's Landing Fisheries v. Buchholzer*, 29 F.3d 229, 232 (6th Cir. 1994) (citing *Anderson*, 477 U.S. at 257).

## ARGUMENT

### I. West's Motion for Summary Judgment Is Premature and Should Be Denied.

Plaintiffs simply cannot respond to Defendants' premature motion without the relevant, critical evidence that will be adduced from the depositions of West, CSS employees, and other defendants with whom they interacted immediately before, during, and after the Clairmont Raid.[4] It is "well-established that a Plaintiff must receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment." *La Quinta Corp. v. Heartland Props, LLC*, 603 F.3d 327, 334 (6th Cir. 2010); *see also Cardinal v. Metrish,* 564 F.3d 794, 797-98 (6th Cir. 2009) (citing *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)). The fact-intensive nature of Plaintiffs' claims in this case amplifies the importance of obtaining deposition testimony, and weighs heavily against requiring Plaintiffs to respond to Defendants' summary judgment motion before all relevant depositions are complete. *See, e.g.*, *Ahlers v. Schebil*, 966 F.3d 518, 535-36 (E.D. Mich. 1997) (denying as premature defendants' summary judgment motion where plaintiffs had only limited discovery in § 1983 action alleging unlawful conspiracy). Although the documentary evidence obtained through written discovery demonstrates Paul West and CSS employees communicated extensively with Defendant Tracy Hall and worked together with MNPD and ICE officials, many of these key figures have not yet

---

[4] *See* Declaration of R. Andrew Free (attached).

been deposed. To fully respond to Defendants' premature motion, Plaintiffs must first depose Paul West and his CSS employees, Tracy Hall and other Greystar staff, and roughly a dozen ICE defendants who were on the scene of the raid.

The Sixth Circuit has set forth five factors a district court should consider when a nonmoving party seeks additional discovery pursuant to Rule 56(d): (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the non-moving party was responsive to discovery requests. *See CenTra, Inc. v. Estrin*, 538 F.3d 402, 423 (6th Cir. 2008) (quoting *Plott*, 71 F.3d at 1196-97). Whether to deny or defer a premature summary judgment motion is committed to the sound discretion of the district court. *See Metrish*, 564 F.3d at 797-98.

Plaintiffs satisfy the first and second elements of the Sixth Circuit's five-factor test because there are obvious inconsistencies between West's newly introduced, self-serving declaration and the documentary evidence obtained thus far, and because Plaintiffs' ability to effectively confront those inconsistencies could determine the outcome of West's motion *CenTra,* 538 F.3d at 423. West declares in paragraph three of his declaration that neither he nor any other CSS employee organized, planned, or otherwise participated in the "Clairmont raid" on October 20, 2010. ECF No. 275-2. But West's actions following the raid included immediately calling Tracy Hall and reporting firsthand observations of ICE and MNPD officers on the property with 50 agents and 10 vans for over an hour and a half, stopping and questioning everyone on the property and "kicking down doors" SAF ¶¶ 19-23. Likewise, paragraph four claims neither West nor CSS officers were on the property during the raid. *Id.* Yet, West's

Answer to the Amended Complaint admits that CSS officers *were* on-site when ICE and MNPD officers arrived. ECF No. 274 ¶ 55. CSS security guards Mike Reeder, Wesley Ford, Chris Graybill, and Justin Mack were on the Clairmont property when ICE and MNPD arrived, SAF ¶ 17, and they observed ICE and MNPD officers during the raid. SAF ¶ 18. And although West's declaration asserts he called the four CSS guards assigned to the Clairmont to the company's Murfreesboro Road headquarters, ECF No. 275-1 ¶ 5, their Daily Activity Logs reflect no such call. RSDF ¶ 4. Finally, West proclaims that no CSS officer played any role in the Clairmont raid, ECF No. 275-1 ¶ 4, yet he disclaims any personal knowledge of what the CSS officers who were on-site at the time of the raid know about the facts of this case, SAF ¶ 25. West's new, uncorroborated declaration thus creates issues that necessitate discovery by Plaintiffs, and that could affect the outcome of Defendants' motion.

The remaining three factors of the *Plott* test for granting a Rule 56(d) motion also weigh heavily in favor of denying Defendants' premature motion and granting Plaintiffs an opportunity to complete discovery. *See CenTra*, 538 F.3d at 423 (listing (3) the length of the discovery period, (4) whether the party seeking discovery has been dilatory, and (5) whether the party seeking summary judgment has been responsive to discovery requests.)

With regard to factors three and four – length of the discovery period and diligence of the nonmovant – although document discovery commenced in early 2012, it ground to a halt as depositions were postponed and document discovery was delayed. This was a result of the Federal Defendants' and ICE's failure to comply with Plaintiffs' subpoenas and discovery requests for over a year. *See* ECF Nos. 172, 251, and 266. This stalemate was not the fault of the Plaintiffs, and Plaintiffs have certainly not been dilatory in their efforts. Discovery does not close until February of 2014.

Finally, the fifth *Plott* factor strongly favors the plaintiffs because Defendants West and CSS only filed their motion for partial summary judgment *after* receiving Plaintiffs' notice of Paul West's deposition. On July 18, 2013, Plaintiffs noticed Paul West's deposition, to be held August 26, 2013. Mr. West and CSS filed his Motion for Partial Summary Judgment eight days later.

In sum, Plaintiffs must at least be afforded an opportunity depose West, his CSS employees, Tracy Hall, and the law enforcement officers on the scene in order to respond the motion for summary judgment. Consequently, Defendants' motion for partial summary judgment should be denied pursuant to Fed. R. Civ. P. 56(d).

## II. West Is Not Entitled to Partial Summary Judgment Because Genuine Issues of Material Fact Exist.

### A. West's Conclusory, Self-Serving Declaration Is Insufficient to Meet Defendants' Initial Burden.

Because Defendants have filed a motion for partial summary judgment, they "bear the initial burden" of "identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers* 344 F.3d 595. Rather than referencing a single piece of record evidence, Defendants rely entirely on the Paul West's conclusory, self-serving declaration. ECF No. 275-2 (citing only to West's Declaration in support of all purported material facts). The Defendants have not carried their initial burden. Just as a nonmovant's self-serving affidavits unsupported by record evidence do not create a material fact dispute sufficient to overcome a properly supported summary judgment motion, *see, e.g., Wolfe v. Vill. of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999), a self-serving and conclusory affidavit, standing alone, does not suffice to establish the existence of undisputed issues of material fact.

Page **9** of **14**

Case 3:11-cv-00994   Document 280   Filed 08/16/13   Page 9 of 14 PageID #: 2485

*See Anderson*, 477 U.S. at 251-52 (requiring evidence upon which the jury could reasonably find for the opposing party).

In addition, many of the statements in West's declaration cannot be considered because they do not comply with Fed. R. Civ. P. 56(c)(4) insomuch as they are not made on West's personal knowledge. In response to Plaintiffs' interrogatories, West stated that he had *no* personal knowledge of what the CSS employees who were working at Clairmont at the time of the raid on October 20 knew about the relevant facts of the case. SAF ¶ 25. But West's Declaration unequivocally asserts that no CSS employee planned, organized, participated in, or was even present during the Clairmont raid. ECF No. 275-1. Paragraphs three through several of West's Declaration should therefore be stricken from the record. Thus, the only evidence upon which Defendants rely in their motion cannot be considered.

Even if this Court determined that West and CSS's motion was timely, it need go no further than their failure to provide any sufficient evidentiary record to support their motion in order to deny the motion.

> B. Even if West's Barebones Declaration were Sufficient to Carry Defendants' Initial Burden, Genuine Issues of Material Fact Exist that Preclude Judgment as a Matter of Law in Defendants' Favor.

Assuming *arguendo* West's declaration could carry Defendants' initial burden of identifying portions of the record demonstrating the absence of any genuine dispute over material facts, five of the seven "material facts" Defendants contend are undisputed (paragraphs 3-7 of ECF No. 275-2) are, as discussed in Part I, *supra*, plainly inconsistent with the record as it stands today. Furthermore, West and CSS's motion tries to avoid acknowledging that the claims asserted against West and CSS include conspiracy claims. The evidence produced to date demonstrates that West and CSS met with members of management and law enforcement in

advance of the raid, SAF ¶¶ 8, 12, 15, questioned individuals regarding their reasons for being on the property, SAF ¶ 7, and provided information to law enforcement officials about license plate numbers of vehicles on the property, SAF ¶ 14. CSS guards also went "door-to-door" following the raid at the Clairmont apartments threatening residents who could not produce a lease with being "ejected for trespass." SAF ¶ 28. Thus, material issues of fact exist which preclude summary judgment for Defendants on any of the claims they identify in their motion.

C.  Defendants' Request for Relief is Improper under Fed. R. Civ. P. 56.

Finally, Defendants' motion must be denied because the relief they seek is within the province of the jury – not the judge ruling on a motion for summary judgment. Instead of asking for judgment on particular claims or defenses, Fed. R. Civ. P. 56(a), Defendants request that the Court enter findings of fact "as a matter of law" on a wide range of topics. ECF No. 275-3 at 7-8. These include a finding that no CSS employee entered any unit, a ruling as to West and CSS's liability under *Bivens* (which Defendants discuss nowhere in their motion or memorandum), and a finding that Paul West did not participate in a conspiracy – notwithstanding Defendants' footnote 1, in which West purports not to challenge Plaintiffs' conspiracy claims. ECF No. 275-3 at 2.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. 255. "The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, **and not to judge the evidence and make findings of fact**." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987) (emphasis added). *See also Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage

the judge's function is not to himself weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Defendants' attempt to engage the Court in affirmative fact-finding "as a matter of law" in the middle of discovery is plainly not the proper function of the summary judgment device. As such, Defendants' motion should be denied.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that Defendants Motion for Partial Summary Judgment be DENIED.

Date: August 16, 2013                                   Respectfully submitted,


/R. Andrew Free

R. Andrew Free, BPRN 30513


| | |
|---|---|
| Elliott Ozment | Andre Segura |
| Tricia Herzfeld | Justin Cox |
| R. Andrew Free | Lee Gelernt |
| Ozment Law | ACLU Foundation Immigrants' Rights Project |
| 1214 Murfreesboro Pike | 125 Broad Street, 18th Floor |
| Nashville, TN 37217 | New York, New York 10004 |
| T: (615) 321-8888 | T: (212) 549-2660 |
| elliott@ozmentlaw.com | asegura@aclu.org |
| tricia@ozmentlaw.com | jcox@aclu.org |
| afree@ozmentlaw.com | lgelernt@aclu.org |

Cecillia D. Wang
ACLU Foundation Immigrants' Rights Project
39 Drumm Street
San Francisco, California 94111
T: (415) 343-0775
cwang@aclu.org

Thomas H. Castelli
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
T: (615) 320-7142
tcastelli@aclu-tn.org

ATTORNEYS FOR JAVIER ORLANDO DERAS, JUAN BAUTISTA MENDEZ MARTINEZ, IASIAS RAXCACO CAJBON, EDUARDO CAHUEC GARCIA, MARVIN BENJAMIN LOPEZ RAXCACO, COSMER JUAREZ CAJBON, CARLOS ROBERTO MENDEZ MARTINEZ, KIMBERLY CUSTIS, AND SHANNON NORIEGA LUCAS, as parent and next friend of her child, B.B.

Matthew J. Piers
José J. Behar
Cara A. Hendrickson
Jenna L. Miara
Caryn C. Lederer
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W. Madison St., Suite 4000
Chicago, IL 60602
T: (312) 580-0100
mpiers@hsplegal.com
jbehar@hsplegal.com
chendrickson@hsplegal.com
jmiara@hsplegal.com
clederer@hsplegal.com

Elliott Ozment
Tricia Herzfeld
R. Andrew Free
Ozment Law
1214 Murfreesboro Pike
Nashville, TN 37217
T: (615) 321-8888
elliott@ozmentlaw.com
tricia@ozmentlaw.com
afree@ozmentlaw.com

ATTORNEYS FOR ANGEL ENRIQUE NUNEZ ESCOBAR, DAVID SALGADO FIGUEROA, GERARDO MORTEO MENDEZ, JESUS ANTONIO SANCHEZ VILLALOBOS, AND JORGE PALENCIA SARMIENTO

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on the following on this date via this Court's electronic filing system.

Sam Delk Kennedy, Jr.
Office of the United States Attorney (MDTN)
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203-3870
Delk.kennedy@usdoj.gov

Allison L. Bussell
Kevin C. Klein
Metropolitan Legal Department
P.O. Box 196300
Nashville, TN 37219
Allison.bussell@nashville.gov
Kevin.klein@nashville.gov

Richard C. Mangelsdorf, Jr.
Brian F. Walthart
Leitner, Williams, Dooley, and Napolitan
414 Union Street, Suite 1900
Nashville, TN 37219
Chuck.mangelsdorf@leitnerfirm.com
Brian.walthart@leitnerfirm.com

William Gerald McCaskill, Jr.
LeVan, Sprader, Patton & McCaskill PLLC
150 Fourth Avenue, N
Suite 1020
Nashville, TN 37219
jmccaskill@lsplaw.net

                                              s/ R. Andrew Free, BPRN 30513
                                              One of Plaintiffs' Attorneys