IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ANGEL ENRIQUE NUNEZ ESCOBAR,   )
et al.   )
   ) NO. 3-11-0994
v.   ) JUDGE CAMPBELL
   )
LEE GAINES, et al.   )

MEMORANDUM

Pending before the Court, among other things, is the Federal Defendants' Motion for
Summary Judgment (Docket No. 378). For the reasons stated herein, the Motion is DENIED.

INTRODUCTION

The Court assumes the reader is familiar with the facts alleged by the parties, which are in
conflict, and will discuss the facts only as related to each issue. Plaintiffs have alleged claims
against the Federal Defendants, who are all Immigration and Customs Enforcement ("ICE") officials,
for violation of constitutional rights and conspiracy, pursuant to 42 U.S.C. § 1983, 42 U.S.C.
§ 1985(3) and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S.
388 (1971). The Federal Defendants[1] move for summary judgment on all Plaintiffs' claims.

SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and
the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State
Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary
judgment motion has the initial burden of informing the Court of the basis for its motion and
identifying portions of the record that demonstrate the absence of a genuine dispute over material

---

[1]    The Federal Defendants are Defendants Abrahamson, Dickey, Epley, Gaines,
Hastings, Hendrix, Hubbard, Koshar, Lane, Lim, McCormick, and Worsham.

facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## SUBJECT MATTER JURISDICTION

The Court will first address the Federal Defendants' argument that the Immigration and Nationality Act ("INA") deprives this Court of jurisdiction to hear Plaintiffs' claims.[2] Two statutory provisions form the basis of Defendants' contentions.

8 U.S.C. § 1252(b)(9)

The INA provides: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or

---

[2]     The Federal Defendants argue that jurisdiction is lacking for claims by all Plaintiffs except Custis and the minor "B.B." Docket No. 379, p. 139.

proceedings brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

As noted by another district court, courts are split on how far the INA's jurisdiction-stripping provisions extend. *Diaz-Bernal v. Myers*, 758 F.Supp.2d 106, 122 (D. Conn. 2010). In *Diaz-Bernal*, the court found that the only potential remedy for the plaintiffs' constitutional claims before the immigration judge was the suppression of evidence obtained from their allegedly illegal arrests. *Id.* at 123. Thus, the court said, the immigration judge could not have afforded the plaintiffs substantive relief on their constitutional claims, and jurisdiction was not barred by Section 1252(b)(9). *Id.*

Citing *INS v. St. Cyr*, 533 U.S. 289 (2001), the Third Circuit has held that because Section 1252(b)(9) is subject to the limitations of Section 1252(b),[3] it applies only with respect to review of an order of removal under subsection (a)(1). *Chehazeh v. Attorney General of the United States*, 666 F.3d 118, 131 (3rd Cir. 2012). "Section 1252(b)(9), therefore, requires only that, when there is an order of removal under subsection (a)(1), review of any issues related to that order must be consolidated into a single petition for review and cannot be brought piecemeal." *Id.*

The scope of Section 1252(b)(9) reaches only claims for judicial review arising from any action taken or proceeding brought to remove an alien. *Hamdi v. Napolitano*, 620 F.3d 615, 626 (6th Cir. 2010). The court in *Hamdi* stated "We . . . cannot endorse an interpretation of the 'arising from' language in § 1252(b)(9) that 'swallow[s] all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien.'" *Id.*

---

[3] Section 1252 is titled "Judicial review of orders of removal." The heading for subsection (b) reads "Requirements for review of orders of removal" and the first sentence of subsection (b) begins "With respect to review of an order of removal . . . "

3

The First Circuit has read the words "arising from" in Section 1252 (b)(9) to exclude claims that are independent of, or wholly collateral to, the removal process. Among others, this includes claims that cannot effectively be handled through the available administrative process. *Aguilar v. United States Immigration and Customs Enforcement Division,* 510 F.3d 1, 11 (1st Cir. 2007). The *Aguilar* court noted that other courts have demonstrated hostility toward requiring exhaustion when adequate relief could not feasibly be obtained through the prescribed administrative proceedings. *Id*. at 12. That court held that the plaintiffs' substantive due process claims were collateral to removal and, thus, outside the channeling mechanism of Section 1252(b)(9). *Id.* at 19.

On the other hand, another district court has found that Section 1252(b)(9) operated to bar *Bivens* claims by the plaintiffs because it found those claims directly arose from action taken or proceedings brought to remove an alien from the United States. *Arias v. United States Immigration and Customs Enforcement Division*, 2008 WL 1827604 at *6 (D. Minn. April 23, 2008).

Here, the Plaintiffs are seeking neither review of any orders of removal nor suppression of any evidence; rather, they are seeking monetary compensation for alleged constitutional violations. The Court finds that such claims are independent and collateral to the Plaintiffs' removal proceedings. The immigration judge cannot award money damages for constitutional violations. Therefore, the Court finds that 8 U.S.C. § 1252(b)(9) does not bar jurisdiction in this Court for Plaintiffs' claims against the Federal Defendants.

8 U.S.C. § 1252(g)

The INA also provides: "[n]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence

4

proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

The Supreme Court has held that this provision applies only to three discrete actions that the Attorney General may take: a decision or action to (1) commence proceedings; (2) adjudicate cases; or (3) execute removal orders. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999). "It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*[4] Thus, the Supreme Court has rejected the interpretation that Section 1252(g) covers the universe of deportation claims or that it says there is no judicial review in deportation cases unless this section provides for judicial review. *Id.* "In fact, what § 1252(g) says is much narrower." *Id.*; *see also Mustata*, 179 F.3d at 1020.

The *Reno* Court listed examples of other decisions or actions that occur during the deportation process to which Section 1252(g) does not apply: decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order. *Mustata*, at 1021 (citing *Reno)*.

---

[4]     The Supreme Court noted good reason for Congress to make special provision for judicial review of these three discretionary acts of the Attorney General.  At each stage the Attorney General has discretion to abandon the endeavor and, in practice, such decisions came to be known as "no deferred actions." *Reno*, 525 U.S. at 483-85.  "Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485. "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485, n.9.

In *Diaz-Bernal*, cited above, the court found that an allegedly unlawful entry and arrest did not commence removal proceedings. The decision to commence removal proceedings against the Plaintiffs was not made until *after* they had been the subject of the allegedly unlawful entry and detention. The court held that the alleged Fourth Amendment violations were separate from any decision to initiate removal proceedings. Therefore, the district court could hear the plaintiffs' constitutional claims. *Diaz-Bernal*, 758 F.Supp.2d at 124.

The Federal Defendants' Memorandum in Support of this Motion admits that the filing of a Notice to Appear (or other charging document) with the immigration court "initiates removal proceedings" against the alien. Docket No. 379, p. 128. The Federal Defendants' counsel stated at the hearing: "I don't believe just the fact that they are out there on that day knocking on doors commences the deportation, because there is nobody to commence it against at that point." Defendants' counsel further postulated that once there is reasonable suspicion that a person is an undocumented alien and the process is commenced to find out more facts, it becomes the first step in deportation proceedings.

As Plaintiffs' counsel points out, before this operation ("Knock and Talk," according to certain Defendants; "Raid," according to the Plaintiffs), the Federal Defendants had no specific information about these Plaintiffs, not even their names. The Federal Defendants could not have shown up with the intent to arrest and commence removal proceedings against these specific, named individual Plaintiffs. Whatever the definition of "commence proceedings," under either set of facts alleged by the parties herein, the actions of the Federal Defendants which are alleged by Plaintiffs to be unconstitutional were not commencing removal proceedings.

6

The Plaintiffs are not challenging the Attorney General's decision to commence removal proceedings against them.  Plaintiffs' claims are not a challenge to a decision or action to adjudicate removal cases.  And they do not challenge the Attorney General's decision or action to execute a removal order. The Plaintiffs do not allege that the supervisory federal officers who implement the removal provisions of the INA or make discretionary decisions about removal proceedings violated their constitutional rights.

For these reasons, the Court finds that Plaintiffs' claims are not barred by the jurisdictional provision at 8 U.S.C. § 1252(g).

## AVAILABILITY OF A *BIVENS* REMEDY

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action for damages against federal officers alleged to have violated the petitioner's Fourth Amendment rights.  Since then, *Bivens* has been extended once for violations of the Fifth Amendment (*Davis v. Passman*, 442 U.S. 228, 230 (1979)), and once for violations of the Eighth Amendment (*Carlson v. Green*, 446 U.S. 14 (1980)).

The Federal Defendants ask the Court to refrain from implying a damages remedy under *Bivens* in this case.  The Court would not have to imply such a remedy, however.  The *Bivens* Court itself recognized such a remedy for improper Fourth Amendment searches and seizures.  Those claims do not require an extension of *Bivens*.  The Court does not have to "imply" a damages remedy - one already exists under *Bivens* for damages against federal officers who violate a person's Fourth Amendment rights.  *See Guardado v. United States*, 744 F.Supp.2d 482, 488-89 (E.D. Va. 2010). *Wilkie v. Robbins*, cited by Defendants, deals with the issue of whether to recognize a *new* constitutional cause of action.  *Wilkie*, 551 U.S. 537, 554 (2007).

7

The Federal Defendants essentially argue that review of any constitutional harm in the immigration context is inappropriate under *Bivens*. That position was rejected by the court in *Diaz-Bernal*, which held that the harms in that case (Fourth Amendment harms) could not be remedied pursuant to any provision of the INA. *Diaz-Bernal*, 758 F.Supp. 2d at 128. Even though the plaintiffs could raise their constitutional issues before the immigration judge, they could only do so by seeking to suppress evidence and not by seeking affirmative relief. *Id.*

Similarly here, the Court finds that if a *Bivens* remedy were precluded, Plaintiffs would have no forum in which to seek a remedy for the Federal Defendants' alleged Fourth and Fifth Amendment violations. Accordingly, the Federal Defendants' position on this issue is not persuasive.

SECTION 1983 - STATE ACTORS

To prove a Section 1983 claim, a plaintiff must establish that: (1) he was deprived of a right secured by the United States Constitution or laws; and (2) the deprivation was caused by a person acting under color of state law. *Spurlock v. Whitley*, 971 F.Supp. 1166, 1175 (M.D. Tenn. 1997). The Federal Defendants argue that they were not acting under color of state law; they were acting under color of *federal* law. Defendants maintain that they were enforcing the nation's immigration laws, which are not state laws.

Plaintiffs claim that the Federal Defendants were acting under color of both state and federal law. Plaintiffs allege that these Defendants jointly planned, conspired and executed the "Raid" at the Clairmont Apartments and benefitted and relied upon state authority to carry out an operation that would not have been possible without the joint action.

Federal officials who violate federal rights protected by Section 1983 generally do not act under color of state law. Where federal officials conspire with state officials, however, they may be

8

held liable under Section 1983. *Strickland v. Shalala*, 123 F.3d 863, 867 (6th Cir. 1997). Just as private parties acting in a conspiracy with a state official to deprive another of constitutional rights may be acting under color of state law, it follows that federal employees who conspire with state officials to violate someone's constitutional rights may be treated as acting under color of state law. *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990); *see also Adams v. Springmeyer*, __ F.Supp.2d __, 2014 WL 1785341 at *21 (W.D. Pa. May 5, 2014).

As set forth below, there are a multitude of factual issues as to what exactly happened before and during the disputed "operation" at the Clairmont Apartments. Plaintiffs argue that the Federal Defendants were relying upon the state officers to "knock and talk" and gain access to the various apartments and tenants. Until the factfinder determines which witnesses to believe about what happened, the Court cannot determine whether the federal officials were conspiring with state officials or whether they were acting under color of state law. The Federal Defendants are not entitled to judgment as a matter of law regarding Section 1983 state action on this record of contested material facts.

CONSPIRACY

42 U.S.C. § 1985(3) provides a cause of action for conspiracies to deprive individuals of their civil rights. The statute makes damages available against those who conspire to deny any person or persons the equal protection of the laws. *Hines v. Town of Vonore*, 912 F. Supp.2d 628, 653 (E.D. Tenn. 2012). To establish a viable claim under Section 1985(3), a plaintiff must show (1) a conspiracy involving two or more persons; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy (4) which

9

causes a deprivation of a right or privilege. *Id.* A plaintiff must also establish that the conspiracy was motivated by a class-based animus. *Id.*; *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005).

A civil conspiracy requires (1) a common design between two or more persons (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. *Nippert v. Jackson*, 860 F.Supp. 2d 554, 566 (M.D. Tenn. 2012).

A civil conspiracy under Section 1983 is an agreement between two or more persons to injure another by unlawful action. *Regets v. City of Plymouth*, 2014 WL 2596562 at *10 (6th Cir. June 10, 2014); *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). To prevail, a plaintiff must prove (1) a single plan existed, (2) the defendant shared in the general conspiratorial object to deprive the plaintiff of his constitutional rights, and (3) an overt act committed in furtherance of the conspiracy that caused injury to the plaintiff. *Id.*; *see also Keppler v. Haslam*, 2013 WL 1668254 at * 5 (M.D. Tenn. April 17, 2013). Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy, and each conspirator need not have known all of the details of the illegal plan or all of the participants involved. *Bazzi* at 602.

The Federal Defendants argue that Plaintiffs' allegations of conspiracy are conclusory and there is no evidence of conspiracy. Viewing the evidence in the light most favorable to the Plaintiffs, however, the Court finds that there are genuine issues of material fact which preclude summary judgment on the Plaintiffs' conspiracy claims.

For example, Plaintiffs have alleged that the Defendants collaborated and cooperated for several weeks before the October 20, 2010 "Raid" through e-mails, phone calls and meetings. The nature and extent of that collaboration and cooperation is hotly contested. The motive of the

Clairmont Defendants in contacting law enforcement is also contested. What was said by whom to whom and whether there were actual threats of violence are disputed. The Federal Defendants assert that they had legitimate law enforcement goals for the operation on October 20th. Plaintiffs aver that no arrests were made or prosecutions brought with regard to the criminal acts allegedly being investigated. Plaintiffs also presented evidence of a meeting among ICE agents, at least one Clairmont representative, and Metro Nashville Police Department Defendant Hardin. The cooperation and collaboration among these Defendants may be of the nature the Federal Defendants claim they were, but the Court cannot judge credibility, choose certain facts but not others, or decide those facts on a motion for summary judgment. The factfinder must assess credibility and find the facts as to what happened before a determination of whether those facts amount to a conspiracy can be made.

QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009). Although the defendant bears the burden of pleading this defense, the plaintiff must show that the defendant is not entitled to qualified immunity. *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011). The dispositive issue is whether it would have been clear to a reasonable officer in the agents' position that their conduct was unlawful in the situation they confronted. *Wood v. Moss*, 134 S.Ct. 2056, 2067 (2014). The court does not ask whether the officers are entitled to qualified immunity under the officers' version of the fact, but whether the plaintiff has disputed those facts. *Younes v. Pellerito*, 739 F.3d 885, 889 (6th Cir. 2014). Determinations of qualified immunity require the Court

11

to answer two questions: (1) whether the officer violated a constitutional right,[5] and (2) whether that

right was clearly established in light of the specific context of the case. *Hayden*, 640 F.3d at 153.[6]

---

[5]  The Fourth Amendment protects citizens against unreasonable searches and seizures by law enforcement officials. It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). The warrant requirement is subject to certain exceptions, such as exigent circumstances, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); *Mincey v. Arizona*, 437 U.S. 385, 390 (1978), and a search that is conducted pursuant to consent. *Fernandez v. California*, 134 S.Ct. 1126, 1128 (2014). Where an officer has, by means of physical force or show of authority, in some way restrained the liberty of a citizen, a "seizure" has occurred. *Terry v. Ohio*, 392 U.S. 1, 19 (1968). A person is "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544 (1980). *See* Counts 1, 2 and 3 of the Third Amended Complaint (Docket No. 329).

  All claims that law enforcement officers have used "excessive force" in the course of an arrest, investigatory stop or other seizure of a free citizen are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Conner*, 490 U.S. 386, 395-96 (1989); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004). In determining the reasonableness of the force used, a Court should consider: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id.* The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id. See* Count 4 of the Third Amended Complaint.

  The Fifth Amendment provides that no person shall be deprived of life, liberty or property without due process of law. The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws. *United States v. Windsor*, 133 S.Ct. 2675, 2695 (2013). An Equal Protection claim must assert that the plaintiff suffered class-based discrimination, such as race or national origin. *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). *See* Count 5 of the Third Amended Complaint.

  The Fourteenth Amendment provides that no State shall deny to any person the equal protection of the laws. The Equal Protection Clause guarantees every person to be treated equally by the State, without regard to race. *Fisher v. University of Texas at Austin*, 133 S.Ct. 2411, 2422 (2013)(Scalia, concurring); *Dixon v. University of Toledo*, 702 F.3d 269, 278 (6th Cir. 2012).

[6]  "The judges of the district court and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818.

When the material facts are disputed as to what exactly happened,[7] what the officers knew or did not know, what the officers did or did not do, the Court cannot determine whether it would have been clear to a reasonable officer in the agents' position that their conduct was unlawful in the situation they confronted. Taking the facts as asserted by the Plaintiffs, there is sufficient evidence that a reasonable jury could find that the Federal Defendants violated the Plaintiffs' Fourth and Fifth Amendment rights or the jury could credit the Federal Defendants' contrary version of the material facts. The bottom line is that a jury will have to determine whether the facts support a finding of violation of constitutional rights.

CONCLUSION

For all these reasons, the Federal Defendants' Motion for Summary Judgment (Docket No. 378) is DENIED.

IT IS SO ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

---

[7]     The Federal Defendants filed 218 pages with 1,123 Statements of Fact which they claim to be undisputed. Not surprisingly, many of those statements are disputed by the Plaintiffs. Plaintiffs filed 91 pages of 448 additional statements, many of which are disputed by the Federal Defendants.

13